O-EJtfSJION OF THE COURT, BY
JüDGE M-ILLS.
Gabriel J. Johnston sold and conveyed an out-lot of twenty acres in Lopisville, to John Gwathmey. Tlf£ purchase money was payable by several instalments. About two months afterwards, Gwathmey sold and com veyed the same lot to Arthur I.. Campbell, for a valuable consideration. Gwathmey failed to pay -the two last instalments to G. J, Johnston,-and confessed a judgment on one of these notes, which was first due, and thereon.aft execution issued, and was returned-no property found,” Gwathmey; having failed and-become insolvent. Wlfile this execution was in force, Gabriel J'. Johnsto-i^ssigned it to Ben. W. Johnston, and-al^ sol'd and assigned to him the note of Gwatjimey for •the last instalment. Ben. W. J.ohnston then ffiéd his bill to ea-force the lien for the pnrehase money against the lot; and-charges,-that Arthur-L. Campbell had notice-that part of. the purchase money was'not paid, and seeks (to subject the lot'in his hands, and made G.-J. Johnsljf^ Cwathmeyjptd Campbell, defenda^.
■ Gftbfid J. Johnatop answered-, admitting these facts ímd a'g-r(Si|jng-’that Éjín. W. Johnston was entitled,?to whatev^jL Hen e-x-Htedi - Gwathmey answered,, a4«ut-ting-his inability to pay the feioant, and states that- fie *318 gave no information or*i$tice tp^ampbell, when he sold the lot, of there bping any papt of the purchase money due.. Campbell gisb denies* loticé, and pleads and reijes that he is an innocent purch’aier for a valuable consideration without notice; insists ’¿hat Gwath-mey «was wealthy at the time, but has since failed; that ■.Gw a til-da e, Gdbriei J. Johnston knew ofhis purcha| rriey, but never gave him wbtice of ajj tlfen, or for months afterwards. '
A subsequent purchaser is bound by implied, as well as express notice.
Where the deed to the subsequent , purchaser re-ferid to the deed made by the party claiming the ' lien, by its date, held that the subsequent purchaser was bound at his peril to notice tb« contents of that deed, altho’ it was not recorded, nor lodged in the office, nor the time arrived when it was required to be so lodged.
Such deed reciting that the consideration was secured to be paid at times future to that when the subsequent purchaser bought, held sufficient notice that the purchase money was not paid, and to support the lien.
|ts, from The court below dismissed the bill which decree B. W. Johnstori has appe^
It is;contended in the answer.of Ca*nlp'bel$fthai the appellant is. only the assignee of these demands, and. therefore Cannot take advantage of the lien or security which -G. J. Johnston held against the lot. As to the judgment arid execution, they were not assignable in law, but were so in equity. The note which had not been closed by judgment, was assignable by the act of assembly rendering such instruments assignable. If the assignment of the execution did not pass the lien, it must be owing 'to something which forbadé it, in the contract between G. J. Johnston and the^appellant. No such objection appears in the writing, and Gabriel-J. Johnston, whose business it was to make it, admit-s the appellant’s right to it. Or it must be owing to the fact, that the assignment per se destroyed the lien. For this we see no good reason. G. J. Johnston could have maintained his bill, and no valid objection is perceived against his assignee of the judgment doing the same thing, and availing himself of all the advantages his assignor possessed, by making him a party.*,! As to the note assigned under the statute, the reason is equally strong. Nothing is withheld by the words of th'e law; therefore, thm passing of the principal took;witb it the incident; and it is more'equitable to say That the assignor should be compelled to- furnish all the facilities and securities which he held, to enable his assignee to recover the debt, than that they should be lost to the assignee by the assignment. The assignee takes the ris$|,e, under the express provisions of the act, subject to all' the equity to;|^hich it was subject ii^he hands of the holder. As he'takes it subject- to' all disadvantages, it is more consonant to the-* principles M reciprocity, to permit him to take and hold it subject to all *319 the.advantages whfeh are attached;to it. This ohjec-lioc.cánnot, ther*, nrevail. . •
The word, se-deodf’heM0*1 not to mean surety.
What issuffi, cieilt evi-to . wj’th'the «deration * stipulated to be paid.
ft is also, insiste# that this judgment and note were assigned in consideration of ayfetsold by the appellant to G, J. Johnstpn,fa1id that on tífat lot he held a lien, which he ought tome, compelled to enforce, instead of this. To thU it ngfabe answered, that were it conceded that the a>iijMÍ«»after taking these securities on others, ’ r n his lot sold, (which is by no means (hot follow, that it was not competent h to transfer to him the debts which :-.in payment, and-^hat the appellant to any legitimate means in his power, to recover those debts, before he resorted'to hig lien, Besides, although it may be probable, yet it is by,, retal clear,) for'G. held could not r means certain, from the proof, that the note and judg-meat were assigned in payment ,for a lot.
It is jjjfelher urged, that it does not appear that the notes iirquestion were given for th'e purchase money of the lot sold to Gwathmcy. To this it may be answered, that besides the presumption which might arise from there being no other dealings shown between Gvvathmey and G. J. Johnston, the deed made by the', latter,to the former, not only agrees with the notes in date, 1but recites the instalments minutely, and (he two last agree precisely with the notes, .both in sums and times of payment; a coincidence which could not have'' happened between .any other distinct transactions,' and which is always held sufficient to. show that one is the consideration of the other.
The question, then, must exclusively turn upon the inquiry,, whether Campbell really had notice of the purchase money not being paid. That he had express or • actual notice, Cannot be pretended; for' there is ntff proof of such notice in the record. But Whether he is not bound by implied notice, is a question $ more seriousness. This doctrine of implied notice is strictly en-" forc.ed in equity, sometimes tp an extent that, seems.to-impose individual hardship. Such presumptive.notice is a conclusion of law, (where, by uie exercise of ordiMfc ry diligence,<j|pthout any cxtraqrdgary precautoria man cannot but acquire a knowledgé^yf the fact charged,) that tó5£has notice,'^without any-proof of actual notice. Tl|e(p'ffiiciple applies where a purchaser cannot make out ‘itine, but by a deed- which leads him to'a. ■ *320 fact material to it, he will not be deemed a purchaser without notice of that fact, butwilL, be presumed conu-sant of that fact; for it is deemed gross neglect, if ho sought not after it. Thus, in Draper’s Company vs. Yardly, 2 Ver. 662, parties who claimed under an individual by mortgage and a rent charge, although he had levied a fine with five years’ non-cláim, w@fei.held bound by notice, to satisfy a legacy out of an l^t|^irbec-ause that individual first took the estate undqr jm'-wifliljrant-iag the legacy, and that will was held tó ftMmplied notice to all purchasers under him. S&, m Dutch vs. Kent, l Ver. 260, 309,' parties claiming .as innocent purchasers, two or three grades or links typyend a patent' which created a trust, were held bound by that grant, on the ground that they- ought to have noticed it at their peril. So, i'n Moore vs. Bennett, a person purchasing from one who claimed by deed revocable by will, subsequent purchasers were held to haver¡J6tice of the will, as well as the power of revocation in tne deed; for no conveyance could be made to a purchaser, but by-the deed, which contained the power of revocation and alluded to the will. This case, will be found to be. analogous in principle, to the present. See Cha. Ca. 246, Pow. on Mort. 571.
In the case now under consideration, the'conveyance from Gabriel J. Johnston to Gwathmey, was executed on the 17th September 1817, and recites the consideration in the following words: “ For apd in consideration of the sum of two thousand five hundred dollars, secured to be paid by him, the said Gwathmey, at the following periods,, to wit, .four hundred dollars on the tiiirdday of March next, 1818; four hundred dollars on the third day of June next, 1818; four hundred dollars -'on the third day of September next, 1818; six hundred and fifty dollars tfn the third day of September, eighteen hundred and.nineteen, 1819; and six hundred and fifty dollars on the third day of September, one thousand eight hundred apd twenty,, the reccipt*of which security is hereby acknowledged,” On the llih of November M*17, not two months after the execution of this conveyance, GwaihjngV sold and conveyed t-h@iot to Campbell. That conveyance recites the consideration as paid, and further declares, that^tis “ th^ saíne lot- that was conveyed it) the said John Gwathnfeyhy Gabriel Jones Johnston and Elizabeth, his wife, by-indenture *321 and- deed bearing date the 17th day of September 3817;” which, prima facie, amounts to express notice. Aware of the effect of this recital, Campbell, in his answer, has reasoned against his being affected by it, as well as denied every fact touching the deed, as it be-hoved him to do. He contends that the words, “ secured” and “ security,” employed in the deed of Gabriel JF. Jphpston, mean that some personal security was given, wj^ifb removed the lien, and that in this sense' he had a.gighj|t.o take it, iff he must notice the contents of this deed. Hhis, is not the literal and proper meaning of the expressions. The words' properly mean that bonds or notes, or some writings, were taken, and personal security would be better designated by the word surety, than security. It is true, we often, in common parlance, say bond'and security, when we intend to communicate the idea that some other or others are bound^Styvhen the bond itself is security.' Such, indeed, isoften the legislative language employed in our statutes; but the words neither necessarily nor properly bear such meaning, and one could not read them, without being put on the inquiry, whether the lien was or was not removed, which the purchase money necessarily created; for the security is received from Gwathmey alone.
It is also denied in the answers, both of Campbell and Gwathmey, that Campbell ever saw this conveyance, and Campbell alleges that he rested on the word of Gwathmey, that he held a conveyance, and never examined it, and that the deed was not of’record when he purchased. It is true, by the certificate of the clerk, this deeaW G. J. Johnston to Gwathmey. was not put on record until about fifteen days after Campbell’s purchase; but the authorities cited, and the principles adopted by them, do not rest upon the registry of the previous titles; for the effect is the same,-if tiie deeds are not recorded at all, if the party to be affected by notice, claims under, and cannot make out title without theni. As to his not having examined the deed, the principle contended for considers that as done, whjph ought to be done, and which no prudent or cautious man would omit doing. It operates as a quasi estoppel, and binds a ¡nan by an equity apparent in the title by which he holds, and does not permit him to claim un *322 der it, when for him, and against it, whe'n it operates against him.
We, therefore, conceive that the notice that not one cent of the purchase money was paid, is complete on the face of this-deed, under which Campbell purchased, and that he is bound by that notice, whether he did or ■did not possess himself of it, when it was so accessible that he could scarcely avoid it. It is in this and the like cases that the maxim, caveat emptor, emphatically applies, and it is reasonable and necessary to bind a party by his own title. The principle-may operate with some hardship, in a few cases; but, as Chancellor Kent observes with regard to the lis pendens, a doctrine of similar operation on subsequent purchasers, “ it is one of the cases in which private mischief must yield to general convenience.” A seller who has taken so much pains, as is done here, to place notice in the road of all who should thereafter attempt to purchase, so that they must stumble over it, if they would not watch their feet, ought not to be deprived of the lien to which the law entitles him.' The lieu ought,-therefore, to be enforced against the lot, and if not discharged, on reasonable time given for that purpose in the court below, the lot, or so much thereof as may be necessary, must be exposed to sale, to raise the balance of the purchase money due and claimed in the bill.
The decree rpust, therefore, be reversed with costs' against Campbell and Gwathmey, and the cause be remanded to the court below, that a decree may be there rendered according to this opinion.