## HENRY WARREN *versus* DAVID G. IRELAND.

If, pending a suit in which land had been attached, the plaintiff assign the demand for value, the equitable estate, after the levy, is in the assignee, as a resulting trust.

In the making of such a levy, if the assignment be stated in the appraisers' certificate, such statement is notice of the trust to any attaching creditor of the assignor.

Whether such creditor, without notice, actual or implied, could, by levying the land as the property of the assignor, hold it discharged of the trust; *quære.*

But with such notice, he could hold only subject to the trust, and could not maintain a writ of entry against the grantees of the *cestui que trust.*

SHEPLEY J. — The demandant claims to recover river lot numbered twenty-five in the township of Chester, excepting a small tract in the south-west corner. Both parties derive their title from R. H. Bartlett.

An execution, issued on a judgment recovered in the name of Ezekiel Hacket against Bartlett, was levied on a lot of land alleged to include this lot, on December 21, 1838, and a record thereof was made in the registry of deeds, on February 22, 1839. James B. Fiske claimed to be the assignee of the demand, upon which that judgment was recovered, by a written assignment of it, which had been lost. The testimony to prove the existence of such an assignment was submitted to the jury, and they found, that the demand had been thus assigned before the judgment was recovered. Hackett conveyed the title acquired by the levy to Fiske, by deed executed on February 19, 1839, and recorded on August 17, 1839, but not acknowledged till September 16, 1839, when it was entered both upon the deed and the margin of the record. Fiske conveyed the same to the tenant by deed of release on April 15, 1840, recorded on November 3, 1842.

The demandant, by virtue of a writ in his favor against Ezekiel Hacket, caused the premises to be attached on March 7, 1839, and an execution issued on a judgment recovered in that suit, to be levied thereon within thirty days after the re-

covery of judgment on November 16, 1844. This levy was recorded in the registry of deeds on December 25, 1844.

The demandant contends, that the land described in the conveyance to the tenant is not the same described in his levy. It appears to be the same described in the levy made in the name of Hacket against Bartlett. It is not perceived, that the demandant's right to recover the premises would become more certain, if the fact alleged were proved. His title is derived from Hacket, and there is no evidence, that he ever claimed to own or to possess any part of lot numbered twenty-five, unless it was embraced by that levy. The demandant can recover only upon the strength of his own title, and if the title of Hacket fail his own falls with it.

The land upon which the levy was made in the name of Hacket, is decribed in the levy as "lot number twenty-five, being river lot in township numbered one in the eighth range, west of Penobscot river, now the town of Chester, bounded and described as follows." The monuments, courses, and distances, are then named. What is bounded as follows? Clearly lot numbered twenty-five, and not another tract of land. The monuments, courses and distances were named as descriptive of that lot. The description commences "at the southeast corner of lot No. 26, on the bank of Penobscot river, at a stake and stones." That is, not the corner of lot No. 26 adjoining to lot No. 25, but the corner opposite; and by following the courses named and allowing them to be varied to conform to the lines of the lots as recently surveyed, and disregarding the monuments named, lot No. 26 would be described as the lot levied upon. By doing so, however, the monuments named would not be found, with the exception of a poplar tree, and such a tree is the monument at the northeast corners of both the lots, Nos. 25 and 26. By supposing "southeast" to have been written by mistake for southwest the monument first named would be at the river between lots 25 and 26, and by following the courses named in the levy and allowing them to be varied as before, the monuments named at both the corners of lot No. 25, back from the river, will be found. Taking into

consideration the general description of the lot as No 25 with these facts, there can be no doubt, that such an error was made; and by rejecting the term "southeast" as inconsistent with the other descriptions, lot No. 25 will be described and conveyed by the levy from Bartlett to Hacket.

The question then arises, whether by the levy made in his name, Hacket acquired such a title, that the lot might be levied upon as his estate, by a judgment creditor.

Having assigned the demand, upon which that judgment was recovered, he had no beneficial interest in the judgment, when it was satisfied by the levy. That levy was made to satisfy a judgment debt due to Fiske, who thereby paid the consideration for the purchase of the estate conveyed by the levy to Hacket at the time, when that conveyance was made. And by a resulting trust, he became the *cestui que trust* and beneficial owner of the lot. Hacket held only the legal title to it in trust for him. *Buck* v. *Pike*, 2 Fairf. 1; *Russell* v. *Lewis*, 2 Pick. 508. The statute in force, when that levy was made, c. 60, § 27, provided, that a creditor might "levy his execution upon the debtor's real estate." If the words "debtor's real estate" are to receive such a construction as to include an estate, in which he had no beneficial interest, and the title to which he held in trust, for another, the effect may be to enable a creditor to obtain payment not from the estate of his debtor, but from the property of another person. It might compel the debtor against his will to violate a most sacred trust, for the purpose of paying his own debt out of another's property. Could it have been the intention of the Legislature by the use of such language to authorize the property of one person to be taken to pay a debt due from another, and to compel him to violate a trust, to accomplish such a purpose? The statute also provides, that the levy "shall make as good a title" to the creditor "as the debtor had therein." If the debtor's title was subject to the beneficial interest of another person in the estate, will any more perfect title be conveyed by the levy and statute provisions to the creditor? If so, the rights of the *cestui que trust* may be destroyed without any act of his own

or of his trustee. To determine that they can be, is to decide that the Legislature without a violation of the fundamental law, may appropriate the equitable property and rights of one person to pay the debts of another. And if the rights of the beneficiary are not destroyed, but still adhere to and follow the title, so that they can be enforced against the statute purchaser, the effect will be, that he will be made by the satisfaction of his judgment to pay for the estate without obtaining any value, for he will become the holder of a title, from which he can derive no benefit. The language used in the statute may have its full effect and these mischiefs be avoided, if it be construed to include those estates, only in which the legal and beneficial interests are united in the debtor. It may be, if such be the construction of the statute, that a creditor may have no means of information, whether an estate apparently owned by his debtor be a trust estate ; and he may fail to obtain any value by a levy, when he has been vigilant to ascertain his rights. This may also happen in other cases, when his debtor has a title to an estate apparently good, which proves to be wholly defective. In such cases the debt remaining unsatisfied, he may by a proper course, have his judgment revived. The case of *Brown* v. *Maine Bank,* 11 Mass R. 153, may be regarded as opposed to this construction of the statute. The question, whether a levy could be legally made upon an estate held in trust, was not raised or decided in that case. It appears to have been assumed, that it might be. When that case was decided, the law respecting trust estates and the remedies for their preservation and protection were less known and less perfect, than they have since become in that State. The title of the *cestui que trust* is in some States regarded as so perfect that it may be taken on execution and appropriated to the payment of his debts, while it cannot be for those of the trustee. *Foote* v. *Colvin,* 3 Johns. R. 216 ; *Jackson* v. *Walker,* 4 Wend. 462 ; *McKay* v. *Williams,* 1 Dev. & Bat. Eq. 405 ; *Elliott* v. *Armstrong,* 2 Blackf. 198. In the case of *Russell* v. *Lewis,* 2 Pick. 508, it was decided, that the tenth section of the English statute of frauds, which authorized such estates to

be taken by execution for the debts of the *cestui que trust*, had not been adopted in Massachusetts, and that such estates could not be levied upon to pay the debts of the *cestui que trust*. While in the case of *Pritchard* v. *Brown*, 4 N. H. Rep. 397, subsequently decided, it was held, that such estates were liable to be levied on for that purpose. In Virginia the *cestui que trust* is permitted to maintain an action of ejectment in his own name to recover such an estate. *Hopkins* v. *Ward*, 6 Munf. 41. But an estate cannot be appropriated by execution to pay the debts of the *cestui que trust* unless it be held as a simple trust for his benefit *sui juris*. *Ontario Bank* v. *Root*, 3 Paige, 478.

The rule is well established, that the judgment creditors of a trustee are not allowed to hold a trust estate against the *cestui que trust*. 2 Fonb. Eq. b. 2, c. 7, § 1, note a.; 2 Story's Eq. § 977.

Omitting to insist upon this construction of the statute, the question will be again presented, whether the demandant can recover possession of the premises and withhold them from the tenant.

The appraisers in their return say, we entered upon the estate "shewn to us by James B. Fiske, agent and assignee of the within named creditor." This was made a part of the record of the levy. The statement that Fiske was the assignee of the creditor was sufficient to communicate to any person obliged to notice the contents of the record the fact, that he had become by the act of the law, or of the party in some mode, legally or beneficially interested in that judgment. It is said, that the demandant could not be required to notice such a fact stated in the record, because the assignment of a debt is not an instrument which the law requires to be recorded. Admitting the rule and the force of this position, it is still true, that a notice, which might be insufficient to prevent a subsequent purchaser from acquiring title in preference to a prior purchaser claiming it by a conveyance not recorded, might be sufficient to prevent the purchaser of a trust estate from holding it discharged of the trust. So vigilant have courts of equity been

to protect the rights of *cestuis que trust,* that the rule has become established, that whatever is sufficient to put the purchaser of a trust estate on inquiry will be sufficient to prevent him from holding it discharged of the trust.    *Smith* v. *Low,* 1 Atk. 489 ; *Green* v. *Slayter,* 4 Johns. Chan. 38 ; *Moragne* v. *Le Roy DuCereveil,* 4 Desau, 256 ; *Ward* v. *Fox,* Hughes, 231 ; *Peters* v. *Goodrich,* 3 Conn. R. 146 ; *Glidden* v. *Hunt,* 24 Pick. 226.    How far he must be considered as having notice of what is contained in the recorded title of the person from whom he derives his title, has been considered and decided by different courts.

A devisee in trust with authority to sell, conveyed the estate and received from the purchaser a deed of trust to secure payment of the purchase money by instalments.    He then, by a contract made for his own benefit, assigned those instalments to another person by an assignment containing a reference to the deed of trust, which referred to the deed of sale, and that referred to the will, by which the trust was created.    It was decided, that the assignee of the instalments must be considered as having notice, that they were derived from the estate devised in trust.    *Graff* v. *Castleman,* 5 Rand. 195.

When a purchaser in the deduction of his title, must use a deed or the record of it, which exhibits a fact shewing an equitable interest in another, he will stand affected with notice of it, and cannot avoid it by shewing, that he was in fact ignorant of it.    *Thompson* v. *Blair,* 3 Mur. 273 ; *Graves* v. *Graves,* 1 A. K. Marsh. 165.

Where a deed of purchase referred to a deed by its date, exhibiting an equitable interest in another, the purchaser was considered as having notice of its contents, although it was not recorded.    *Johnston* v. *Gwathmey,* 4 Litt. 318.

In the case of *Murray* v. *Ballou,* 1 Johns. Chan. 566, the defendant purchased a lot of land of Winter, who held the title in trust for Mrs. Green.    There was a deed recorded from Heatley to Mrs. Green, which recited the declaration of trust executed by Winter.    It was contended, that this was notice to Ballou of the trust.    The chancellor decided otherwise, but in-

timated, that it would have been notice, if there had been a
deed on the record, to which Winter was a party, containing
such a recital.   By the rule established in these cases, the de-
mandant must be considered as having implied notice of the
fact stated in the record of the appraiser's certificate, that
Fiske was the assignee of the creditor, and by that put upon
inquiry into the extent of his rights as such.   And this would
be sufficient to prevent his holding the legal title discharged of
the trust.

In cases of simple trust, the title being held for the sole ben-
efit of the *cestuis que trust*, entitled *sui juris*, they may retain
possession, may convey the estate, and may compel the trustees
to convey it for their benefit.   Fonb. Eq. b. 2, c. 7, § 2, and
c. 8, § 1 ; 1 Mad. Ch. Pr. 361 ; *Watts* v. *Turner*, 1 Russ. &
My. 634 ; *Goodson* v. *Ellison*, 3 Russ. 583 ; *Angier* v. *Stan-
nard*, 3 My. & Keene, 566 ; *Jervoise* v. *Duke of Northum-
berland*, 1 Jac. & Walk. 550 ; *Jasper* v. *Maxwell*, Dev. Eq.
357 ; *Newell* v. *Morgan*, 2 Harrington, 225.

As the demandant holds this lot, if the levy be regarded as
valid, subject to a simple trust, he cannot recover it from the
grantee of the *cestui que trust*.   And whether the instructions
may or not have presented the case to the jury upon precisely
correct views, of the rights of the parties, the demandant upon
the application of legal principles, not being entitled to recover
cannot have been aggreived by them.

*Exceptions overruled.*

*Warren*, plaintiff, *pro se.*

*Kent*, for defendant.