Sawyer v. Town of Skowhegan.

| 57 | 500 |
|----|-----|
| 92 | 306 |
| 57 | 500 |
| f98 | 60 |
| 57 | 500 |
| p103 | 350 |

## OSGOOD SAWYER vs. TOWN OF SKOWHEGAN.

In passive trusts, where the right to possess and enjoy the property is in the *cestui que trust*, the trustee cannot maintain a writ of entry against him or those holding under him.

Thus, where the second-story of a building was conveyed to a committee of an incorporated odd fellow's lodge, chosen to receive the conveyance for the benefit of the lodge, and subsequently, by a vote of the lodge, the premises were conveyed, by another committee duly chosen for that purpose, to the defendants' predecessors in title; *Held*, that the former committee cannot maintain a writ of entry against the defendants to recover the premises.

Neither the lodge nor its trustee acting for it will be allowed to convey its property, receive and retain the consideration, and then repudiate the conveyance upon the sole ground, that, in making it, they acted in violation of *their own* constitution and by-laws.

On report.

WRIT OF ENTRY to recover the upper story of town-house in Skowhegan. Writ dated Feb. 8, 1866. Plea, *nul disseisin*.

It appeared that on the 30th of April, 1849, the town of Skowhegan, at a legal meeting, and under a proper article, voted to convey to the Carrabassett Lodge of Independent Odd Fellows, the "second story of the town-house" in consideration of the sum of $400, and that John G. Neil, Reuel Weston, Francis Tego, be a committee to execute the deed; that at a meeting of the lodge, holden on Dec. 8, 1849, Osgood Sawyer, Samuel W. Weston, and Josiah Varney, were chosen a committee to purchase and receive a deed of the second story of the town-house; that, in accordance with the votes, the town committee, on the 3d of January, 1850, in the name and in behalf of the town executed and delivered a deed of the premises to "Osgood Sawyer, Samuel W. Weston, and Josiah Varney, a committee appointed by the Carrabassett Lodge of Independent Odd Fellows, a society in Skowhegan, incorporated by law, their successors and assigns," "to have and to hold the same to the said grantees, their successors and as-

signs, to their use and benefit forever;" that the lodge continued in possession of the premises, under their deed, until Dec. 5, 1855, when, at a meeting held for the "purpose of choosing officers, and to see what action the corporation will take in reference to disposing of their hall," they "voted that the corporation sell their hall to Moses Littlefield for $500," and "that Josiah Varney and James B. Dascomb be a committee for said corporation to deed said hall to said Littlefield;" that in pursuance of the vote, and in consideration of $500 actually paid by Littlefield and received by the corporation, the committee, in the name and in behalf of the corporation, on Dec. 7, 1855, executed and delivered to Littlefield a quitclaim deed of the premises; that Samuel W. Weston and Josiah Varney died prior to the commencement of this suit; that the plaintiff was present at the meeting of Dec. 5, 1855, but opposed the sale of the hall as being in violation of the constitution and by-laws of the lodge; that the lodge became extinct about the time of the conveyance to Littlefield; that the plaintiff received his dividend of the consideration paid by Littlefield for the hall; that the title of Littlefield came through sundry mesne conveyances to the defendants; that the lodge was renewed in 1862, and it still continues; that a majority of the lodge voted to sell to Littlefield; that a form of the deed was agreed upon by the committee, and submitted to and approved by the lodge.

After the evidence was all in, the case was reported to the full court, who were to enter judgment in accordance with the law of the case.

*D. D. Stewart*, for the plaintiff.

The conveyance, by the defendants to the plaintiff, and Weston and Varney, was in trust. *Bancroft* v. *Cousen*, 13 Allen, 50. *Sturtevant* v. *Jaques*, 14 Allen, 523. And although no words of inheritance are in the deed, still the conveyance being in trust, the plaintiff and his co-trustees took an estate in fee-simple, but in trust for the benefit of the lodge. *King* v. *Parker*, 9 Cush. 81. *Gould* v. *Lamb*, 11 Met. 84. *Wells* v. *Heath*, 10 Gray, 24. *North* v. *Philbrook*, 34 Maine, 532.

The attempted conveyance by Varney and Dascomb was void; for all of the trustees must join. *Austin* v. *Shaw*, 10 Allen, 553. 2 Washb. on Real Prop., 206. *Pearce* v. *Savage*, 51 Maine, 410. *Wilbur* v. *Almy*, 12 How. 180. *Sinclair* v. *Jackson*, 8 Cow. 543.

The death of plaintiff's co-trustees vested the whole property in him as survivor. *Webster* v. *Vandeventer*, 6 Gray, 428. *Chapin* v. *Chicopee*, 8 Gray, 580. 2 Washb. on Real Prop., 201. *Peabody* v. *Lyman*, 5 Allen, 540.

This action is brought solely for the benefit of the plaintiff's *cestuis que trust.* The pretended conveyance to Littlefield was in violation of the constitution and by-laws of the lodge, and nothing passed by it.

The legal estate still remaining in the plaintiff, can he as trustee maintain a writ of entry against his *cestuis que trust*, or their grantees, who do not justify their possession as being under the trustee by a plea of special non-tenure, but plead *nul disseisin?*

Lord Mansfield held that a trustee could not maintain ejectment against his *cestui que trust.* 3 Burrow, 1901. Because the *cestui que trust* was entitled to the use and income of the property, and of course of the possession, under his trustee. 1 Greenleaf's Cruise, 385 (414). Ejectment under the old common law was not a real action but substantially trespass, the general issue being "not guilty." 3 Chit. on Plead. 1141. 1 Saunder's Plead. and Ev. 995.

There is a wide difference between ejectment under the common law (which was a possessory action only), and a writ of entry which turns wholly upon the title. Stearns on Real Actions, 80, 81, and 82. *Hodsdon* v. *Staple*, 2 D. & E. 700. *Fay* v. *Taft*, 12 Cush. 448 (as corrected in 2 Bennett & Heard's Dig. 547, note).

The opinion of Lord Mansfield, 3 Burrow, *supra*, was soon overruled in the English courts, and the settled law there, for nearly a century, has been that a *cestui que trust* cannot successfully defend against an action of ejectment, much less a writ of entry brought by his trustee.

The Lord Mansfield doctrine would destroy the legal title of the trustee, and vest the trust estate in the *cestui que trust* as abso-

Sawyer *v.* Town of Skowhegan.

lutely as the statute of uses did in the *cestui que use.* No convey-ance of the property could be required by the *cestui que trust* in a court of equity, because he could have a complete remedy at law.

"Courts of law cannot take recognizance of trusts." *Goodtelle* v. *Jones*, 7 D. & E. 50. "The legal title must prevail in a court of law." *Goodtelle* v. *Jones*, *supra. Hodsdon* v. *Staple*, 2 D. & E. 384.

"Ejectment brought by a trustee against his *cestui que trust* is not distinguishable from ejectment brought by any other person." *Roe* v. *Read*, 8 D. & E. 122.

"The doctrine that the legal estate cannot be set up at law by a trustee against his *cestui que trust*, has been long repudiated." *Doe* v. *Wroot*, 5 East, 132. 1 Chit. on Plead. 190 (Ejectment). *Weekly* v. *Rogers*, 5 East, 138 (note). *Neare* v. *Avery*, 30 Eng. L. & E. 471. 1 Chit. Gen. Pr. 7.

Same doctrine is found in almost every court in America. Thus, under the plea of *nul disseisin*, see *Newhall* v. *Wheeler*, 7 Mass. 199; *Russell* v. *Lewis*, 2 Pick. 509; *Stearns* v. *Palmer*, 10 Met. 35; *Crane* v. *Crane*, 4 Gray, 323; *Fitzpatrick* v. *Fitzgerald*, 13 Gray, 402; *Essex Co.* v. *Durant*, 14 Gray, 447; *Chapin* v. *So. in Chic-opee*, 8 Gray, 583; *Raymond* v. *Holden*, 2 Cush. 268; *Phelps* v. *Townsley*, 10 Allen, 555; 2 Washb. on Real Prop. 206, 210.

Also, in New York, *Jackson* v. *Pierce*, 2 Johns. 221; *Jackson* v. *Chase*, 2 Johns. 84–86; *Jackson* v. *Deys*, 3 Johns. 422; *Jackson* v. *Van Slyck*, 8 Johns. 380; *Sinclair* v. *Jackson*, 8 Cow. 543.

In *Moore* v. *Spellman*, 5 *Denio*, 225, the ancient and modern cases are all reviewed, and the doctrine adhered to.

So in the United States supreme court, *Watkins* v. *Holman*, 16 Peters, 58; *United States* v. *King*, 7 How. 847; *Green* v. *Mezees*, 24 How. 275.

And in Vermont, *Beach* v. *Beach*, 14 Verm. 28.

And in Illinois, *Wales* v. *Bogue*, 31 Ill. 465.

And in Iowa, *Page* v. *Cole*, 6 Clarke, 153.

And in Kentucky, *Stinebaugh* v. *Wisdom*, 13 B. Mon. 467. See also, 2 Greenl. on Ev. §§ 331, 556; 2 Washb. on Real Prop. 206,

Sawyer *v.* Town of Skowhegan.

210; Hilliard on Rem. for Torts, 108, § 18; Adams on Ejectment, 32; Hill on Trustees (Whart. ed.), 274 (note); Lewin on Trusts, 482; *Cox* v. *Walker*, 26 Maine, 504.

*Warren* v. *Ireland*, 29 Maine, 62, simply sustains the doctrine that a creditor of a trustee shall not levy on the trust estate. To the same is a large class of cases, such as *Bostick* v. *Keiven*, 4 J. J. Marsh. 597 (3 U. S. Dig. 611, § 91); *Smith* v. *McCann*, 24 How. 398; *Williams* v. *Fullerton*, 20 Verm. 346; *Bancroft* v. *Cousen*, 13 Allen, 50.

The last sentence in *Warren* v. *Ireland*, was inadvertent. Nothing in the reasoning, or authorities cited, called for, or sustained it. It was not intended to overrule the vast weight of authorities without even referring to them. It even twice quotes approvingly *Russell* v. *Lewis*, 2 Pick. 510. No elementary writer quotes *Warren* v. *Ireland*, as an authority overruling the well-settled doctrine contended for by the plaintiff.

*Nul disseisin* raises the issue of title and no other. It admits not only possession by the defendant, but that he has ousted the plaintiff. Stearns on Real Actions, 205 (232). Under this plea the whole question is, which party can show the best legal title. Stearns on Real Actions, 205. *Wyman* v. *Brown*, 50 Maine, 144. *Green* v. *Kemp*, 13 Mass. 520. *Dunbar* v. *Mitchell*, 12 Mass. 373. *Chapin* v. *So. in Chicopee*, 8 Gray, 582.

If, instead of denying the plaintiff's title by their plea of *nul disseisin*, the defendants could have shown that they were in possession of the demanded premises, under the trust, and by the permission and consent of the plaintiff as trustee they might, by pleading special non-tenure under the plaintiff, have defeated the action. *Russell* v. *Lewis*, 2 Pick. 510. Stearns on Real Actions, 205, 208. But after pleading *nul disseisin*, such proof was inadmissible. Same authorities.

*J. Baker*, for the defendants.

WALTON, J.   This is a writ of entry in which the plaintiff claims to recover seisin and possession of the second story of the town-house in Skowhegan.

April 30, 1849, the town of Skowhegan voted to deed to a lodge of odd fellows the second story of the town-house, and that John G. Neil, Reuel Western, and Francis Tego be a committee to make the conveyance.   December 8, 1849, the lodge of odd fellows chose Osgood Sawyer (the plaintiff), Samuel W. Western, and Josiah Varney, a committee to receive the deed.   January 3, 1850, a conveyance was made by the town committee to the lodge committee.   Since that time two of the lodge committee have died; Osgood Sawyer (the plaintiff), is the sole survivor.   December 5, 1855, the lodge of odd fellows voted to sell their hall to Moses Littlefield, and chose Josiah Varney and James B. Dascomb a committee to make the conveyance, and the conveyance was made the next day; and through sundry intervening conveyances, Littlefield's title is now held by the defendants.

The plaintiff contends that the attempted conveyance by the lodge to Littlefield was void; that the conveyance to him and his two associates by the town committee vested the title in them in trust for the lodge of odd fellows; that they held as joint tenants; that the decease of the other two trustees (Western and Varney) vested the whole estate in him as survivor, and entitles him to maintain this suit against the defendants to recover possession of the premises.

The defendants, among other propositions, contend that the plaintiff is, at most, but a naked trustee, holding the legal title for the sole use and benefit of the lodge and their grantees, and that such a title is insufficient to oust either the lodge or their grantees.

Trusts are of two kinds, active and passive.   The latter are sometimes called dry, naked, or simple trusts.   In the former, active duties are imposed.   In the latter, no active duties are imposed; the trustee is a simple depositary of the title.   In the former, the trustee controls the trust property.   In the latter, the cestui que trust controls it.   The former are useful, and are em-

ployed to secure and protect the property of spendthrifts, minors, married women, and the like. The latter are not useful; they tend to obscure titles, mislead the public, and facilitate fraud; and it was the object of the statute of uses to abolish them. Hence we find the courts encouraging the former and discouraging the latter.

It was formerly held in England, that the title of a simple or passive trustee should not prevail against the equitable title of the *cestui que trust* even in actions at law. In *Hart* v. *Knot* (1 Cowper, 46), Lord Mansfield declared that " it had often been determined, that an estate in trust merely for the benefit of the *cestui que trust*, should not be set up against him." And again in *Doe* v. *Pott* (Douglas, 721), that " it had been settled for years that a mere trust estate should not be set up against a *cestui que trust*." And in a case referred to in *Buller's Nisi Prius*, on page 110 (*Lade* v. *Holford*), he is quoted as saying that he and many of the judges had resolved never to suffer a plaintiff in ejectment to be nonsuited by a term standing out in his own trustee.

And in this court in *Warren* v. *Ireland* (29 Maine, 62), it was held, that a demandant, holding the land subject to a passive or simple trust, could not recover it from the grantee of the *cestui que trust*. On page 68 the court say : " In cases of simple trust, the title being held for the sole benefit of the *cestui que trust*, entitled *sui juris*, they may retain possession, may convey the estate, and may compel the trustees to convey it for their benefit." Authorities are then cited in support of the proposition, and the court proceeds : " As the demandant holds this lot, if the levy be regarded as valid, subject to a simple trust, he cannot recover it from the grantee of the *cestui que trust*."

The same doctrine is established in New York by statutory enactments. And Chancellor Kent says, the provision is founded in sound policy. 4 Kent's Com. 308. If we adhere to the decision in *Warren* v. *Ireland*, we reach the same result by judicial adjudications, which has been there established by legislative enactment. If the doctrine be good, founded in sound public policy, in fact so desirable as to call for legislative enactments in its favor, why

should we unsettle it by overruling a solemn decision of our own court? If the question were now presented to this court for the first time, we might be justified in hesitating how to answer it. But such is not the fact. The doctrine is already established, and we see no good reason for overturning it.

This rule does not apply to active trusts, where the duties to be performed by the trustee make it necessary for him to have the possession, and the right to dispose of the trust property ; it applies only to simple trusts, where the duties of the trustee are passive, and the *jus habendi* and the *jus disponendi* are intended to be in the *cestui que trust*. Professor Washburn says, that although it is so often laid down by courts and writers, that *cestuis que trust* have a right to compel their trustees to suffer them to occupy the trust estates, and to require of them to make conveyances thereof as the *cestuis que trust* shall direct, it is apprehended that the general proposition can be true to its full extent, only in respect to simple, or what are sometimes called, dry trusts, where the *cestui que trust* is entitled to the exclusive benefit of the land, and the trustee is, by the nature of the trust, merely passive with respect to it. 2 Washb. on Real Prop. 209, § 19. Thus limited, the doctrine is reasonable and just.

The only objection to it is, that it tends to confound the distinction between legal and equitable jurisdictions. And, on this account, the doctrine has been very much shaken, if not wholly repudiated in England. See *Doe* v. *Wroot*, 5 East, 137, and authorities there cited in note a. And it is by no means universally adopted in this country. See authorities cited by plaintiff's counsel, and 2 Washb. on Real Prop. 206, 210, §§ 6, 18.

But this objection, however weighty, where courts of law and courts of equity are separate tribunals, can have but little weight with us, where both jurisdictions are vested in the same court. It has no merit beyond what relates to matter of form. The authorities all agree that in equity the title of the *cestui que trust* will prevail over that of a mere naked or passive trustee. Why may not this equitable rule be as justly applied when the parties are before

the court on a writ of entry, as when they are before the same tribunal on a bill of complaint?   We think it can.   It was so applied in *Warren* v. *Ireland* (29 Me. 62), and we see no sufficient reason for overruling the decision in that case.   In active trusts, where the duties to be performed by the trustee require him to have possession of the trust property, he may undoubtedly maintain a writ of entry, not only against strangers, but against the *cestui que trust* himself.   But in passive trusts, where the right to possess and enjoy the property is in the *cestui que trust*, the trustee cannot maintain a writ of entry against him, or those holding under him.   This distinction is recognized in *Fitzpatrick* v. *Fitzgerald* (13 Gray, 400). The court there say that there would doubtless be an exception to the rule that the trustee may maintain a writ of entry against his *cestui que trust*, where by the terms of the trust, or by agreement of the trustee, the *cestui que trust* is entitled to actual possession of the trust estate.

When a conveyance of real estate is made to one person, and the consideration is paid by another, a trust is created by implication of law.   Such a trust may be established by parol evidence. R. S., c. 73, § 11;  *Baker* v. *Vining*, 30 Maine, 121.   If there are no express stipulations to the contrary, it is a naked, passive trust, one of the implied conditions of which is, that the *cestui que trust* shall have the right to possess and enjoy the trust estate, and dispose of it at his own will and pleasure, and may compel the trustee to execute such deeds as he may direct; and the trustee can maintain no action against the *cestui que trust*, or those claiming under him, to oust them of their possession.

If this rule is applied to the case now under consideration, it is decisive against the plaintiff.   He does not claim to have any other than a trust estate in the demanded premises.   The whole consideration was paid by the lodge of odd fellows, and the conveyance was made to him and his two associates in trust for them.   Nothing appears to show that their trust was clothed with active duties to be performed by them.   They appear to have been naked depositaries of the title only.   Their trust, therefore, was passive, not active.

Sawyer *v.* Town of Skowhegan.

The legal presumption is, that the *jus habendi*, as well as the *jus disponendi*, the right to possess and enjoy, as well as the right to dispose of the property, was in the lodge; and this presumption is undoubtedly in accordance with the truth, and the understanding of the parties. Why should such a naked depositary of the title merely be allowed to dispossess the equitable owners or those claiming under them? We think he should not.

We have not overlooked the fact that the plaintiff claims that the attempted conveyance by the lodge was in violation of their constitution and by-laws, and therefore void; that the hall still remains the property of the lodge as *cestui que trust;* and that he is endeavoring to recover possession of it for their benefit under their new organization. But regarding the law as settled that it was competent for the lodge to convey their equitable title, we think the law will not allow them, or their trustee acting for them, to repudiate the conveyance upon the sole ground that in making it they acted in violation of their own constitution and by-laws. To allow them to do so would be monstrously unjust. Odd fellows is the name of a secret society with whose constitution and by-laws the world at large is not supposed to have much knowledge. To allow such a society to sell a piece of property, receive and retain the consideration, and then repudiate the sale and reclaim the property from a *bona fide* purchaser, upon the ground that in making it they violated some of their own secret rules and regulations, would be an outrage upon justice. It would be allowing them to reap an advantage from their own wrong, if it can be called a wrong for such a society to vote to-day to do what they had previously voted not to do. Nor can it make any difference that in this case the plaintiff and others protested against the sale. It is a case where the will of the majority must control.

The defendants set up several other grounds of defense, but the one already examined being decisive of the case, it is unnecessary to consider them. *Judgment for defendants.*

CUTTING, DICKERSON, BARROWS, and DANFORTH, JJ., concurred.

The following dissenting opinion was submitted by

TAPLEY, J. This is a writ of entry to which the defendants have pleaded *nul disseisin.* The legal title of the premises in controversy is in the plaintiff.

Under this plea the defendants offer, in defense, evidence showing that the legal title thus held was held in trust for their grantors, and claim by the deed of their grantors all the equitable rights which they possessed passed to the defendants, and they now interpose this equitable estate against the recovery by the plaintiff in this case.

It appears to me that such a defense cannot, in an action at law under such pleadings, prevail. The legal title being in the plaintiff, he must prevail, and the defendants, having only rights in equity, cannot set them up for inquiry and execution in an action at law under this general issue pleaded.

If the defendants have equitable rights in the premises, the equity court will ascertain, upon proper pleas and proofs, what they are, and make such decrees concerning them as equity requires. It is for such purposes the equity court is established. If it were competent for the common-law courts to make such inquiries, and then direct execution in accordance with equity rules, there would be no need of, or use for the equity court. By the statute of this State, an equity court has been established, and its powers and jurisdiction defined. Among other things, it " has jurisdiction, as a court of equity, in cases of trusts." R. S., c. 77, § 8.

The mode of proceeding is clearly pointed out in the " Rules for the regulation of practice in Chancery Cases," and when under those rules the case is completed, and ready for hearing, it must be heard and determined by at least five judges. Rules of Court, and R. S., ch. 77, §§ 14 and 17.

In direct contravention of these statutory enactments the defendants claim to set up, prove, and execute, in a court of law, a case of trust.

If the trustee had been in possession, and the *cestui que trust* had commenced a real action at law to dispossess him, relying upon his

equitable right to possession, I think we should have regarded the proceeding as a novel one at least. Nevertheless, if the equitable rights of the *cestui que trust* can be inquired into, determined, and executed in answer to an action at law, commenced by the trustee, I do not see why those rights may not be relied upon to sustain the same kind of action commenced by themselves.

If they prevail in the first instance, it is because their rights are superior in the court where they are being examined to those of the trustee, and it would indeed be a strange anomaly of the law that they should become inferior when they, as moving party, seek to protect them.

If they may thus obtain possession, and thus resist the action of the trustee, both by themselves and their assigns, the trusteeship is a nullity. If they can invest a purchaser with all the privileges, immunities, and incidents of a perfect estate without the knowledge or action of the trustee, he is indeed a " dry trustee " in every sense of the word.

If they may thus convey at pleasure, there is indeed no trust. There is nothing held by the trustee. The *cestuis que trust* have it all, and control and dispose of it at their will and pleasure.

Neither trustee, courts of equity, or courts of law have any control over the matter ; in short, as before remarked, there is no trust.

To admit such defences, involves, in the trial of a real action at law under the plea of *nul disseisin,* the determination of these questions, viz. :

1. Have the defendants any equitable (not legal) rights in the premises ?

2. Do these rights amount to a trust, as understood in equity ?

3. Is the trust an active or passive trust ?

Now these questions, as before remarked, have been, by the law-making power, committed to the court of equity, consisting of at least five judges, for determination. If they are submitted to a single judge, or a judge and jury, it is in contravention of those statutes and the rights of the parties under those statutes, and completely ousts the equity court of its jurisdiction and transfers it to another,

practising under entirely and essentially different rules of investigation and execution.

A practical illustration of the rule will show this.

A real action is commenced by A. against B. B. appears and pleads *nul disseisin*. A. shows a perfect legal title in himself. B., under this plea, says to the court, this is all true, but I have an equitable estate in these premises, and A. holds them under such circumstances, that in equity he must be regarded as holding it in trust for me. Now I ask the court to determine these matters, and execute the trust by keeping the plaintiff out.

Here is the case as presented to the court, and it proceeds to hear evidence, *pro* and *con*, to ascertain if this claim of B. is sustained.

The evidence being in, who is to determine these questions, the judge or the jury, or both ? If either or both, is not the finding conclusive upon the parties ? If it is, is not the equity court completely ousted of its jurisdiction ? And, be it remembered, all this takes place under the allegations of a writ of entry, and a plea of *nul disseisin*. If this be a legitimate defense under this plea, then every judgment for the plaintiff, in such actions, is a bar to proceedings by the *cestui que trust* in equity.

Questions of this kind are mixed questions of law and fact, and if all questions of fact are submitted to a jury, they must be instructed in equity law as well as the common law.

That this is an innovation upon the practice in this State, there can be no doubt. During the half century of its existence, no case is known where such a defense was admitted, and the reports of the Massachusetts courts attest, in an unmistakable manner, that the practice never prevailed there before or since we became a State ; and, more than this, no case can be found in England since the decision of Lord Kenyon, in *Hodgden* v. *Staple*, 2 Term Rep. 684, or in any State of the United States where a court of equity exists, where such a defense is admitted, and prevails over the legal title in this class of actions.

Mr. Greenleaf says, " The plea of *nul disseisin* in a writ of entry puts in issue the legal title to the land, or, in other words, the seisin

Sawyer *v.* Town of Skowhegan.

on which the demandant has counted, and the lawfulness of the tenant's entry. If, therefore, it is pleaded in bar of an action brought by a trustee against the *cestui que trust*, it would entitle the demandant to recover. 2 Greenl. Ev., § 556.

Mr. Washburn says, " But a trustee can only be divested of his right of possession by a decree of court of equity. In a court of law, on the contrary, a *cestui que trust* is a tenant at will, or, at sufferance, of his trustee, and the latter may recover against him in an action of ejectment for the possession of the premises." 2 Washb. on Real Actions, § 18, p. 210.

In *Wyman* v. *Brown*, 50 Maine, 139, Mr. Justice Walton says, " the real struggle, therefore, under the general issue in a real action, is to see which party can show the better title in himself."

In *Stevens* v. *Palmer*, 10 Met. 32, the court say, " it is now well settled that the legal estate must prevail at law, unless the trustees should be enjoined by a court of equity."

In *Raymond* v. *Holden*, 2 Cush. 264, the court say, " in a court of law the legal estate must be taken to be the title, and, as such, must here prevail."

*Crane* v. *Crane*, 4 Gray, 324, is a case directly in point. The court say, " the only question to be settled in the action is that of the legal title. The question for whose benefit the land is to be held, is not in issue."

The same view is sustained in a number of other cases in Massachusetts. See *Chapin* v. *Chicopee*, 8 Gray, 583; *Fitzpatrick* v. *Fitzgerald*, 13 Gray, 402; *Essex Co.* v. *Durant*, 14 Gray, 447; *Phelps* v. *Townsley*, 10 Allen, 554.

To the same point in Vermont, Kentucky, Illinois, and Iowa. See *Beach* v. *Beach*, 14 Verm. 28; *Wales* v. *Bogue*, 31 Illinois, 465; *Stenebaugh* v. *Wisdom*, 13 B. Monroe, 467; *Page* v. *Cole*, 6 Clarke, 153.

To the same point see the following cases in the supreme court of the United States. *Watkins* v. *Holman*, 16 Peters, 58; *United States* v. *King*, 7 How. 847; *Greer* v. *Mezees*, 24 How. 275.

The only case cited to sustain, in any degree, such a defense to an action at law, is the case of *Warren* v. *Ireland*, 29 Maine, 62.

This case raised no such question, and decided no such question. There are some remarks of the learned judge, who drew the opinion, which might lead one, upon a hasty and cursory reading, to regard such a doctrine declared by the judge; but a careful examination of the case will show, that the point, now decided, was neither raised nor decided.

The question involved was the validity of a levy. It appeared that the premises levied upon was held by the execution debtor, in trust for another party. The execution debtor holding only the legal title. The question was, whether " the lot might be levied upon as his estate by a judgment creditor."

By a course of reasoning and the citation of authorities the judge arrives at the conclusion, that the statute was not designed to operate upon such an estate, and then proceeds to show, as one of the reasons leading to this conclusion, that such a construction of the statute as would make the statute apply, would be of no avail to the creditor, because, having notice of the trust, he would take land subject to it, and, under that trust, he could not withhold it from the tenant. In support of this proposition, he adduces equity principles and authorities.

In the commencement of this part of his discussion he says, "the question will be again presented, whether the demandant can recover the possession of the premises, " and withhold them from the tenant."

Having made this inquiry he proceeds to show that the creditor did not make the levy without notice of the trust, and concludes by saying, " this would be sufficient to prevent his holding the legal title discharged of the trust."

The purpose seems to be to show, that if the levy should be regarded effectual, it would convey no beneficial estate, and, therefore, not within the statute concerning levies. The concluding remarks of the opinion, disconnected from the question presented, and the course of reasoning pursued, might lead to the adoption of them as authority for the doctrine advanced in the case at bar; it will, however, be noticed, that the citations made in the discussion

of this last point are from equity authorities, to show the condition of the parties in equity.

The great question was, whether the levy reached any beneficial interest; whether the debtor had anything to which the levy could attach.

In the examination of this question, he had before him and cites as authority, *Russell* v. *Lewis*, 2 Pick. 508, wherein this identical question was raised and decided.

The court, in that case, by Wilde, J., say, " Two questions, therefore, are raised : 1. Whether, on the plea of *nul disseisin* in a writ of entry by the trustee against the *cestui que trust*, the demandant is entitled to recover.   2. Whether a trust estate is extendible, or may be set off to a creditor on execution.   As to the first question, it is perfectly clear that the plea of *nul disseisin* puts in issue the legal title, and as this is in the demandant, he is entitled to judgment."

As to the second question, he says, finally, " we have no statute making trust estates chargeable with the debts of the *cestui que trust*, and as they were not so chargeable by the principles of the common law, we are brought to the conclusion that the tenant acquired no title by extending his execution on the premises."

With this clear, plain, explicit decision of the question now under consideration before him, is it reasonable to conclude that he meant to adopt the case as authority for one point, and overrule it as to the other when the case he had under consideration did not require it, and when he well knew such a decision was against not only the uniform practice of this court for more than a quarter of a century before, but against an unbroken course of decisions in all the States where the question had arisen.   He had also before him, and cited the case of *Buck* v. *Pike*, 11 Maine, 1, wherein the court say, "as jurisdiction of trusts generally, without qualification or exception, is given to this court wherever they arise, according to the settled practice of a court of equity, they must be recognized and enforced;" and I cannot bring myself to the conclusion, that he meant to override this authority, as well as the statutes, by recog-

nizing and enforcing them in the common law courts under inapt pleadings.

It is said "the same doctrine is established in New York by statutory enactments." I do not understand the statutes of New York permit an equitable interest to be set up as bar to a common law action founded on the legal title. That practice has never been adopted in New York by the court, or directed by the legislature.

The statutes of New York declare, that in cases of passive trust, where the trustee has only a naked formal title, and the whole beneficial interest, or right in equity to the possession and profits of land, is vested in the person for whose benefit the trust was created, such person so entitled in interest shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions as his beneficial interest. If any such passive trust be created by any disposition of lands by deed or devise, no estate or interest whatever vests in the trustee. 4 Kent's Com. 308.

It will be perceived, that in New York it is not an equitable interest that the *cestui que trust* interposes, but it is the legal estate. The trustee has none.

This change, it will be perceived, was not made by judicial edict, but made by the law-making power, the only power competent to make it. If legislation was necessary to produce the change there, is it any the less so here? It appears to me that the admission of such a defense is not only against the uniform practice of the court, from its earliest existence to the present time, but it is irreconcilable with the statutes of the State concerning the jurisdiction and execution of this class of rights and interests.