BRIGHAM v. PETER BENT BRIGHAM HOSPITAL et al.

(Circuit Court of Appeals, First Circuit. December 7, 1904.)

No. 549.

1. WILLS—CONSTRUCTION AND VALIDITY—LAW GOVERNING.

Where a provision of a will is to be executed in the state wherein the testator was domiciled and the property situated, all the essential facts being local in that state, the construction and effect of the provision are to be determined in accordance with the law of such state at the time when the rights of the parties thereunder accrued.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 947–950.]

2. CHARITIES—CHARITABLE CORPORATION—CAPACITY IN WHICH DEVISE IS HELD.

A corporation created in accordance with the provisions of a will, and to which the testator's residuary estate is transferred by his legal representatives as directed by the will, to be used by it in founding and maintaining a hospital, does not hold the property in trust in the true sense of the term, but as its own, to be devoted to the purpose for which it was created.

3. SAME—RULES GOVERNING DEVISE—TRUST FOR FOUNDING HOSPITAL.

A provision of a will establishing a trust for the founding of a hospital for the care of sick persons of a class particularly described therein, to be effectuated by a conveyance of property to a proper corporation to be organized as the will directs, is within the rules applicable to public charities.

4. SAME—ADMINISTRATION—RIGHT OF VISITATION.

Where property has been lawfully disposed of for charitable uses by a will, the heirs of the testator have no standing in equity to question the powers or title of the devisee or of intervening executors or trustees.

5. SAME—LIMITATION FROM ONE CHARITY TO ANOTHER.

Regardless of any question as to the rules relating to perpetuities, or as to the technical character of the changes in title which may succeed each other, a limitation over from one charity, which speaks from the death of the testator, to another charity, is valid.

6. SAME—CHARITABLE BEQUEST—VESTING OF ESTATE.

A testator, by one paragraph of his will, directed that his residuary estate should be taken, held, managed, and invested by his executors for the term of 25 years; that from the net income they should pay certain specified legacies; that the balance of the net income should be added to the principal of said estate, so that the same should be accumulating for the said term of 25 years, at the expiration of which term they should procure the formation of a corporation, to which said estate and its accumulations should be transferred to be by it used and employed for the purpose of founding a hospital for the care of sick persons in indigent circumstances residing in a specified county. The paragraph closed with the words: "And I give, devise and bequeath said rest and residue of my property and estate accordingly." Held, that the entire estate to which the paragraph related was impressed with a trust in favor of the charity named from the death of the testator, subject to the subordinate charge in favor of the legatees, and that the gift vested at once on the testator's death.

7. SAME—ACCUMULATIONS.

In such case the validity of the gift was not affected by the provision for accumulation, since, as the whole estate vested in the charity from the death of the testator, the accumulations would follow the principal as an incident, as matter of law, even if no provision had been made for them.

8. SAME—EXECUTION OF TRUST—DEATH OF EXECUTORS.

Nor was the trust in such case vested in the executors of the class which is regarded in equity as personal, so that it would be defeated by their

134 F.—33

death before the expiration of the term of 25 years, but on the happening of that event administrators de bonis non with the will annexed, who were also appointed trustees by the court, might lawfully execute the trust by forming the corporation and conveying the property to it at the end of the stated term.

9. SAME—GIFT TO CHARITABLE CORPORATION—CAPACITY TO HOLD PROPERTY.
    Where a testator devised his residuary estate in trust, to accumulate for a term of years, and then be transferred to a corporation to be organized for the purpose, to be used in founding a hospital, the fact that at the time of the testator's death a charitable corporation was not permitted by the laws of the state to hold property to the amount of the devise, did not invalidate the gift as to the excess, since it was to a corporation only which was legally capable of taking, and no rights of the heirs of the testator were affected by a special act, passed after his death, authorizing the organization of such a corporation.

10. SAME—COLLATERAL ATTACK.
    A statutory limitation on the amount of property which charitable corporations may hold can be taken advantage of only by the state, and when, by special act, the state has waived its right by authorizing the creation of a particular corporation with enlarged capacity to enable it to accept and hold a gift, the power of the corporation in that respect cannot be questioned in any manner.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 126 Fed. 796.

Chas. A. Snow (Everett W. Burdett and John Gordon, on the brief), for appellant.

Lewis S. Dabney, for appellee Peter Bent Brigham Hospital.

John L. Thorndike (Frederick H. Nash, Asst. Atty. Gen., on the brief), for appellees Attorney General of Massachusetts, E. D. Codman, and L. H. H. Johnson.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge.   This is a bill brought in the interest of one of the heirs at law of Peter Bent Brigham, late of Boston, in the commonwealth of Massachusetts, deceased, with reference to the construction and effect of the portion of his will which we will hereafter state.   The bill was dismissed by the Circuit Court, and the complainant appealed to us.   There are several heirs, but the bill was not expressed to be in behalf of all.   The respondents are the Peter Bent Brigham Hospital, and the administrators who succeeded in due course the deceased executors of the will, and who were also appointed trustees.   No question has been made as to parties, and we refer to that topic only that it may be understood that we neither directly nor impliedly express any opinion in reference thereto.   We are satisfied that the interests represented before us are such that we are not required to refuse to proceed to a decree on account of any question of that nature.

As the case relates to the construction and effect of a will, and as all the essential facts were local in the commonwealth of Massachusetts, we are bound to proceed in accordance with the rules of law as settled in that state when the rights of the parties accrued, although, so far

as this appeal is concerned, we perceive no substantial question as to which any of these rules differ from those approved by the text-writers, or by the Supreme Court of the United States, or courts of authority in England. The scrivener who drew the will evidently had in mind the established rules applicable to the subject-matter thereof and approved precedents. For any court to question either would be to threaten confusion, not only to existing titles, but to those which may be hereafter created. The history of the case, as stated by the complainant, is as follows:

The questions here arise under the fourteenth, or residuary, paragraph of the will of Peter B. Brigham, who died on May 24, 1877, leaving real estate which was then inventoried at a valuation of $690,000, and gross personal estate valued in the inventory at $592,000, a total valuation of realty and personalty amounting in the aggregate to $1,282,000, before the payment of debts, legacies, annuities, and other disbursements. Messrs. Robert Codman and Joseph Healy, the executors named in the will, duly qualified, and jointly acted as such until the death of Healy; and thereupon Robert Codman acted as sole surviving executor until his death in 1901, about 24 years after the decease of the testator. At that time the entire estate, including realty and personalty, had accumulated to such an extent that it was then valued at $4,338,000, according to the inventories then filed, of which $3,014,401 was the valuation of the realty.

On January 25, 1901, the defendants Edmund D. Codman and Laurence H. H. Johnson were appointed by the probate court as trustees under the will. On April 15, 1901, the same parties were appointed administrators de bonis non with the will annexed. A hospital corporation was duly formed and organized on May 8, 1902, under the general laws of Massachusetts. Rev. Laws, c. 125. The Legislature, on May 22, 1902, passed a statute (Acts 1902, p. 330, c. 418) authorizing the defendant corporation to hold real and personal estate up to $5,900,000 in value. On May 24, 1902, conveyances were made to that corporation.

The will first gave a number of legacies, amounting in all to a considerable sum, most of them payable immediately. These were covered by the second to the thirteenth paragraphs, each inclusive. Then succeeded the fourteenth paragraph, now in question, as follows:

"Fourteenth. All the rest and residue of my property and estate, of every kind and description, real personal and mixed, of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, I direct my said Executors to take, hold, manage and invest, for the term of twenty-five years from the time of my decease, and to take the rents, interest, income and profits thereof and from the net income thereof to appropriate and pay as follows, that is to say:

"1. They shall pay to my sister, the said Sarah B. Jacobs the sum of five hundred dollars in each and every month, during her natural life.

"2. They shall pay to my niece Sarah Jane Brigham Kendall the sum of two thousand dollars annually during her life, in equal quarter annual payments; and at her decease, they shall distribute the sum of thirty-two thousand dollars to and among her children or child, if any, who shall survive her. If she leave no child living at her decease, this legacy to her children shall lapse.

"3. They shall pay to my niece Roxana Brigham Hankinson, the sum of two thousand dollars annually, during her life, in equal quarter annual pay-

ments; and at her decease they shall distribute the sum of thirty-two thousand dollars to and among her children or child, if any, who shall survive her. If she leave no child living at her decease, this legacy to her children shall lapse.

"4. They shall pay to my niece Deborah Northrup the sum of two thousand dollars annually during her life, in equal quarter annual payments; and at her decease they shall distribute the sum of thirty-two thousand dollars to and among her children or child, if any, who shall survive her. If she leave no child living at her decease this legacy to her children shall lapse.

"5. They shall pay to my niece Clarissa N. Dewey, the sum of two thousand dollars annually, during her life, in equal quarter annual payments; and at her decease they shall pay the said sum of two thousand dollars per annum to her eldest son, Benjamin G. B. Dewey if living, during his natural life, in equal quarter annual payments; and upon the decease of both the said Clarissa N. Dewey and Benjamin G. B. Dewey they shall distribute the sum of thirty-two thousand dollars to and among the child or children, if any, of said Clarissa N. Dewey, who shall then be living. But if no child of said Clarissa N. Dewey be living after her decease and the decease of the said Benjamin G. B. Dewey, then this legacy to children so surviving shall lapse.

"6. They shall pay to Hannah Wright Devlin, wife of William Devlin of Bordentown, in the State of New Jersey, the sum of three hundred dollars per annum, during her life; and at her decease they shall distribute the sum of five thousand dollars to and among her children or child, if any, who shall survive her. If she leave no child living at her decease, this legacy to her children shall lapse.

"7. They shall pay to Eugenia M. Howard, sister of the aforesaid William Devlin of Philadelphia in the State of Pennsylvania, the sum of three hundred dollars per annum, during her life, and at her decease, they shall distribute the sum of five thousand dollars to and among her children or child, if any, who shall survive her. If she leave no child living at the time of her decease, this legacy to her children shall lapse.

"In no one of the above seven provisions of this article shall the words 'child' or 'children' be construed to include the representatives of any deceased child or children.

"My said Executors shall add the balance of said net income that shall remain after making the payments aforesaid, to the principal of my said estate, so that the same may be accumulating for the term of twenty-five years aforesaid; and at the expiration of said term of twenty-five years from my decease, my said Executors shall set aside a sum or sums of money and may deposit the same in some safe trust company—preference being given, other things being equal, to the Massachusetts Hospital Life Insurance Company, of said Boston,—which shall be sufficient to provide for the payment of such of the foregoing legacies and bequests, if any, as shall then be unfulfilled; or may provide for the payment of such unpaid legacies and bequests by the purchase of annuities for the unpaid legatees or otherwise, as my said Executors shall deem expedient; & after the payment, or provision for the payment, as aforesaid of all the foregoing bequests and legacies, the unexpended balances, if any, shall be paid to and for the use of the hospital hereinafter provided for.

"8. At the expiration of said term of twenty-five years from the time of my decease, my said Executors shall dispose of said rest and residue of my property and estate and of all the interest and accumulations which shall have accrued thereon, for the purpose of founding a hospital in said Boston, to be called the Brigham Hospital for the care of sick persons, in indigent circumstances, residing in the said County of Suffolk, in the following manner, —that is to say: They shall procure the formation of a corporation, to be called the 'Brigham Hospital' with suitable provisions as to officers, their powers and duties for control, direction, conduct and administration of the Corporation and the care and management of the funds in its charge; and upon the legal formation and organization of said Corporation, my said Executors shall transfer to it all the property and estate provided for it as aforesaid, to be by it used and employed for the purpose above declared:—and I give, devise and bequeath said rest and residue of my property and estate accordingly."

The complainant rests his case on the following general proposition; and, because we are to treat it as involving two distinct topics, we have divided it by the figures (1) and (2):

(1) "The respondents are placed in a real logical dilemma, for the devise was either contingent or vested at the testator's decease. If contingent, it violated the rule against perpetuities, and was entirely void."

(2) "If vested, it could vest only to the extent of the legal capacity of such charitable corporations to hold property by devise or bequest, and the attempted devise of the excess was void."

Taking that division which we mark (1), the result is an admission, which the complainant could not avoid, that, if the estate covered by paragraph 14 vested at the testator's decease, he has no case, unless it be for the narrow reasons stated in so much as we have marked (2).

We should observe that the corporation contemplated by the will was not to hold in trust, in the technical sense of the word, the property which it might receive. It was to hold it for its own purposes in the usual way in which charitable institutions hold their assets. Such a holding is sometimes called a quasi trust, and an institution like the one in question is subject to visitation by the state; but the holding does not constitute a true trust. On the transfer of the property devised by the fourteenth paragraph to a corporation as was anticipated, all technical trusts ceased. Meanwhile, as we will see, if the gift in dispute vested, the legal fee, wherever it remained, was held on a true trust to such an extent that if, on the organization of the corporation in accordance with the provisions of the will, the title did not at once vest in it under the statutes of uses, which statutes still have force in the United States when the fee is held on a mere passive trust, of which Sawyer v. Skowhegan, 57 Me. 500, is a striking illustration, the equity courts would compel a conveyance from whomsoever held the fee. Perry on Trusts (5th Ed.) § 299.

As this is a suit in equity, and equity regards as substantial only equitable interests, it would follow that, whether the gift was vested or not, it would not concern the complainant whether, pending the organization of the contemplated corporation, the legal fee remained in the heirs or vested in the executors or their successors. Neither, for the same reason, would any question raised by the complainant merely with regard to the power of the successors of the original executors concern him; nor, as we will see, would the question whether a proper title had been made in the corporation which is the respondent herein. That the heirs have not even visitatorial powers which a chancery court would regard was shown to be the law in Massachusetts in St. Paul's Church v. Attorney General, 164 Mass. 188, 41 N. E. 231; that question being in fact the principal, if not the sole, important issue in that case. Therefore the chancery courts would not concern themselves with undertaking to protect them, or any of them, as complainants in a bill in equity, so far as the substantial interests involved have been lawfully devised or bequeathed.

The fourteenth paragraph established a trust for the founding of a hospital for the care of sick persons of the class particularly described therein. There has been no doubt that a fund devoted to the founding of hospitals in general is within the rules as to public charities. So,

also, there is no question that a trust for the founding of a single hospital is within the same rules. All this has been positively held over and over again, and is illustrated by several authoritative decisions cited by each party to this litigation, which form a part of a class so numerous that we do not regard it necessary to detail them. Of course, the immediate beneficiary of a provision for founding a single hospital, or school, or other single institution is not directly within the ordinary requirement of a charitable trust, to the effect that it must provide for a class of beneficiaries; but, as the ultimate purpose to be accomplished is for such a class, a scheme of the character contemplated by Mr. Brigham's will is, as a whole, regarded as within the rules touching public charities.

Therefore we have here a perfect trust for the founding of a hospital for the care of the sick, to be effectuated by a conveyance to a proper corporation to be organized as the will provides. This, when made, accomplishes the trust. Thus, the general purpose of the testator was continuous from his death. Therefore there is no practical difficulty in the way of holding that the trust vested at the death of the testator, however it might have been otherwise under the peculiar circumstances of some leading cases, instances of which are well known. A conveyance like that which, perhaps, would be necessary after the organization of the corporation to vest in it a title, and the title thus vested, have been sometimes described as representing an executory devise. But in the present case a conveyance to a corporation organized according to the will would be in execution of the trust, and flow out of it. Even if, at the expiration of the period named in the will, the legal estate would not, under the statutes of uses, or in any manner analogous thereto, be drawn to the corporation when properly organized, a conveyance of the legal estate to it would operate only to merge that estate with the equitable estate; and, although the result of the merger would be to extinguish the equitable estate, yet, until the merger took place, the equitable estate would be the master estate. Thus, instead of anything in the strict nature of an executory devise, we have an equitable estate, which in equity absolutely controls the property, merely drawing to it the legal estate at such time and under such circumstances that equity compels the merger. We may return to this topic later.

It is common learning that equitable estates and equitable interests may be limited in fee simple, or otherwise limited, like any legal estate. Godefroi on Trusts (2d Ed.) 2. This doctrine is so familiar that it hardly need be enlarged on; but it is fully explained in Williams on Real Property (19th Ed. 1901), commencing at page 178. It is a well-known sequence that an equitable estate may be limited in one direction, while the legal fee is limited in another, and that neither will be affected by any contingent limitations, executory devises, or other peculiar estates which may affect or inhere in the other. For that reason, in the present case, for the purpose of ascertaining the nature of the interests involved in this equitable proceeding, we must ascertain where the equitable fee is, without being disturbed by the condition of the legal title, even if the passage of that title from the heirs or the executors, as the case may be, to the hospital which is to be incor-

porated in accordance with the will, can be regarded as made effectual only by the way of executory devise. In other words, if we find the equitable interests were vested from the decease of the testator, we are not concerned by the nature of the changes in the condition of the legal title. This at once brings us to the fact that, notwithstanding any questions as to the rules with regard to perpetuities, or as to the technical character of the changes in title which may succeed each other, a limitation over from one charity which speaks from the death of the testator, or from the execution of the deed which provides for it, to another charity, is valid. This rule is clearly stated in Jarman on Wills (6th Ed.) *262, where Christ's Hospital v. Grainger is explained. In that case a limitation over for the benefit of the second charity was sustained after a lapse of more than 200 years. This rule was specifically restated in Russell v. Allen, 107 U. S. 163, 165, 173, 2 Sup. Ct. 327, 27 L. Ed. 397, and in Jones v. Habersham, 107 U. S. 174, 185, 2 Sup. Ct. 336, 27 L. Ed. 401.

Other reasons, perhaps of a broader character, might be given for supporting this rule; but it may well be suggested that, where there is more than one charitable purpose, whether they come into existence simultaneously or successively, there is only one apparent cestui que trust, which cestui que trust represents the intended beneficiaries of the charity, and represents them with efficient legal authority. In England this is the crown acting for the public, or the chancellor as the representative of the crown. With us it is the public—that is, the state representing the public, or the chancellor representing the state. This is what Godefroi on Trusts (2d Ed.) intends when the author states, at page 768, that a charitable interest created by a trust is a "public interest"; and it is also what is intended by Fontain v. Ravenel, 17 How. 369, 385, 15 L. Ed. 80, and the citations from Story's Equity Jurisprudence there accepted. It is also what is fully explained in the opinion rendered in behalf of the Supreme Court by Mr. Justice Miller in Mormon Church v. United States, 136 U. S. 1, 51, 56, 59, 10 Sup. Ct. 792, 34 L. Ed. 481. It being thus impossible that there should be more than one representative cestui que trust, no matter to how many charities, if simultaneously or immediately succeeding each other, the property is devoted by will or deed, it may well follow that directions in reference to the property thus devoted can raise only one equitable title, regardless of changes in the legal title.

Nevertheless, as this topic relates to matters which are governed by settled property rules, our discussion would not be complete, nor the conclusions which we may state be accepted as correct, unless we bring ourselves within proper technical relations, and support ourselves by established authorities. All this is perfectly accomplished in the present case by referring again to the well-known circumstances of Christ's Hospital v. Grainger, reported first in 16 Sim. 83, and again on appeal before Lord Chancellor Cottenham in McN. & G. 460. That decision has not only been accepted by the Supreme Court in all its aspects in the cases cited, but it has become a settled part of the law. It perfectly illustrates this case in the most extreme form in which the complainant can put it. There there were two trustees and two charitable trusts. The legal estate was declared to be vested in the first trustee and the

equitable estate in the first trust, and, after a lapse of two centuries, the legal estate, and also the equitable estate, were transferred on the second charity. Assuming (as seems to have been to some extent assumed) that in the case at bar, under the circumstances, a vesting over of the legal title in the hospital would be in the way of an executory devise, we have here, as in Christ's Hospital v. Grainger, trustees (that is to say, the executors, or the heirs) holding a strict trust for the purpose of founding a hospital, succeeded by the hospital, which, when incorporated, will also hold for a charitable purpose continuous upon the first charitable purpose; that is, for the care of sick persons in indigent circumstances.

Thus the authoritative construction of the fourteenth paragraph is that for all the purposes of this litigation the entire estate to which that paragraph relates was impressed with a trust from the death of the testator, subject to a subordinate charge in favor of the individual legacies contained therein. The whole rest and residue to which the paragraph relates is given in one mass, and devoted as a unit to several legacies, some of which require payments as of the time of the testator's death. It would demand very emphatic reasons, none of which exist here, to justify a conclusion that this gift of a single unit should be broken up and divided between what is necessarily vested and what is contingent. The "said rest and residue" at the very close of the paragraph means the same "rest and residue" with which it commences; and it therefore has clear reference to the estate not disposed of by the prior paragraphs 2 to 13, each inclusive. Consequently, so far as this expression is concerned, alike at the beginning and closing of the fourteenth paragraph, it is the ordinary gift of all the estate which remains after payment of prior specific legacies; and such a gift, unless there is some clear language otherwise, or some provision necessarily leading to the contrary, is authoritatively held as passing a vested title. Moreover, the closing language, as follows, "I give, devise and bequeath said rest and residue of my property and estate accordingly," although not necessary under the ordinary rules applied in construing gifts of the rest and residue, was probably inserted from greater caution, and positively puts the nature of the title beyond question.

In reply to the above, the complainant makes the following propositions:

"A bequest or devise of future accumulations or future income is necessarily contingent, under the well-settled Massachusetts rule of construction, however the will may be construed as to the principal of the estate."

"The fact that accumulations are included in the gift and devise tends strongly, if not conclusively, to show that the vesting of the whole, principal as well as accumulations, was intended to be postponed to the end of the twenty-five years."

"The gift to the proposed hospital of the 'unexpended balances, if any,' is in form and substance a contingent gift."

"The necessity for accumulation for the term of twenty-five years was prescribed by the testator as a condition precedent to the vesting of the entire gift."

"It is clear that before the accumulations for any one year can vest in the charity the accumulation for that year must first have taken place as a condition precedent. The large accumulations of the estate for the twenty-second,

twenty-third, twenty-fourth, and twenty-fifth years are therefore clearly subject to conditions precedent which are too remote within the rule."

"The fact that the devise and gift were to a nonexistent corporation shows that the whole devise and gift were intended to be contingent."

"The execution of an instrument of transfer or conveyance was, under the terms of this will, a necessary condition precedent to the acquisition of title by the defendant hospital."

"Will unmistakably provides that the title of the defendant hospital shall be acquired only upon the legal formation and organization of the corporation."

"Lapse of time is a condition precedent. Here the estate granted to the hospital upon the expiration of the term of twenty-five years is subject to the condition precedent that the time shall first have elapsed before any estate vests."

"The fact that there are intervening contingent remainders tends to show that the future estate of the hospital is itself contingent."

"Before it is possible to hold the estate to the defendant hospital as vested in it at the decease of the testator, this question must be satisfactorily answered: Did the equitable fee in the real estate left by the testator vest in any one immediately upon his decease? If so, in whom, and what parcels of real estate so vested? The same questions must also be answered as to each parcel of real estate acquired by the executors as a part of the accumulations. What applies to one parcel applies to all."

"In the case at bar, upon any possible construction of the will, there was clearly an equitable estate, interest, or charge in favor of individuals, preceding the future estate in fee granted to the defendant charitable corporation."

"The question whether the defendant hospital had a vested equitable estate vesting at the decease of the testator ultimately depends upon the answer to this inquiry. Was the defendant hospital (or any one acting in its interest) entitled to call upon the trustees for a conveyance of the fee immediately upon the testator's decease? If so, the equitable estate was vested. If not, it was contingent."

In addition to the above, the complainant states generally that there are other conditions precedent to any vesting under the fourteenth paragraph. These contentions are, first, to the effect that the testator placed personal confidence in his executors, so that the corporation could be organized only by them, and so that the gift was therefore necessarily contingent on their taking action, while no one could tell whether they would take action until after the expiration of the 25 years named in the will; second, a proposition, which is probably embraced in the first proposition, that it was for the executors named in the will personally to see to it that "suitable provisions were made" as to officers and other matters touching the proposed corporation, and that as to this the executors named were to use their absolute discretion; third, that there was a contingency whether or not the Legislature would remove the charter limits as to the amount of property which charitable corporations could legally hold; and, fourth, that the fourteenth paragraph directs a conversion of the entire accumulated estate into money at the end of the period of 25 years, and that the question whether such a conversion would be made involved a condition precedent to the vesting of any interest in the proposed corporation.

All these objections relate to topics which are necessarily existent in every case where the courts have sustained charitable bequests or devises to be worked out through means not positively ascertained at the death of the testator, or which provide that a corporation to hold shall

be organized under the direction of the testator's executors, and that the property shall accumulate for some period designated by the will. As such elements are necessarily involved in donations of that character, if any of them are fatal here, no such charities could properly have been sustained; and yet they always have been, except under rare circumstances, not existing here.   As to this it is not important to notice especially the fact of the period of 25 years named in the fourteenth paragraph, because the possibilities involved in the other features which we have named might have extended beyond the time allowed by the usual rules as to perpetuities, which possibilities, therefore, would be equally as fatal as the limitation of time, if either could be.

It is not necessary to travel over the text-books or the authorities for the purpose of illustration.   It is sufficient to refer to Inglis v. Sailors' Snug Harbor, 3 Pet. 99, 7 L. Ed. 617, wherein the estate was to accumulate for an indefinite time (that is, until the income would support 50 sailors, page 105, 3 Pet., 7 L. Ed. 617); and where, also, the managers of the gift were made so uncertain that it remained to be determined by the executors or trustees under the will, or by the Legislature of the state of New York, whether the gift should be vested in the executors or trustees as a body of individuals, or in a corporation to be organized by that Legislature.   The same general observations apply to Ould v. Washington Hospital for Foundlings, 95 U. S. 303, 24 L. Ed. 450, where the gift was to a corporation to be created by Congress after the death of the testator.   Of course, the latter case, as well as Inglis v. Sailors' Snug Harbor, was within the ordinary rule as to perpetuities, because the time when each corporation might be organized, if ever, was wholly indefinite, and not limited.   Moreover, as in Inglis v. Sailors' Snug Harbor the gift did not go into effect until the trustees should judge that the proceeds of the estate would support 50 sailors and upwards, there was another indefinite limitation.

Therefore, while it is true that these various propositions of the complainant relate to uncertainties more or less uncertain, none of them are of the class which, under the rules applicable to wills, amount to such an uncertainty that the law regards it as a contingency in the technical and proper sense of the word.   But the complainant also maintains that these uncertainties grouped together disclose an intent on the part of the testator to create an estate which would not vest in charity until the expiration of the period of 25 years.   We have, perhaps, said enough on this point; but, inasmuch as this method of interpreting the intention of the testator is a reasonable and customary one where the intention is at all doubtful, we deem it proper here to state the incidental rule which governs the application of the major rule.   Jarman on Wills, which is the standard authority, ordinarily accepted without question in Massachusetts as well as in England, and by the federal courts, at page [*809], lays down what has everywhere been accepted, as follows:

"It has been generally thought that a very clear intention must be indicated in order to postpone the vesting under a residuary bequest, since intestacy is often the consequence of holding it to be contingent, or at least (and this is the material consideration) such may be its effect."

This is illustrated by what was said in behalf of the court by Mr. Justice Gray in McArthur v. Scott, 113 U. S. 340, 378, 5 Sup. Ct. 652, 660, 28 L. Ed. 1015, as follows:

"For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event."

Although hardly necessary to cite authorities on the point, yet this rule of interpretation has been uniformly recognized in Massachusetts as far back as there is any record. In Dingley v. Dingley, 5 Mass. 535, 537, decided in 1809, it was said: "For it is a rule of law that a remainder is not to be considered as contingent when it may be construed consistently with the testator's intention to be vested." Applying this rule, it would follow, notwithstanding all the various uncertainties and other supposed peculiarities to which the complainant has called our attention, that the estate given by the fourteenth paragraph would be held as vested independently of the positive language, expressive of the intent of the testator, with which it closes. Taking the paragraph by and large, the various propositions made by the complainant, all combined, cannot secure a different result than that which we have stated at the earlier part of this opinion.

We ought to observe that in our discussion we make no distinction between the realty and the personalty, as it is established, at least within the United States, that, with the aid of the law of trusts, when both personalty and realty are given together—and, indeed, when not given together—each has equal advantages and disadvantages as to all the particulars we are discussing.

The complainant urges with especial force his propositions based on the fact that a portion of the testate estate included specific items of realty; also on the claim that the trust vested in the executors by the fourteenth paragraph of the will was a personal confidence, and could not be executed by their successors; and again, on the specific claim that the provision for accumulation violates the rules as to perpetuities. As to none of these does he bring any text-writer or authoritative judicial decision to his support, while the entire trend of each is the other way. An example is Ould v. Washington Hospital for Foundlings, 95 U. S. 303, 24 L. Ed. 450, already referred to, where the gift was specifically of certain lots of real estate, with directions to make application from the remaining portion of the deceased's estate annually to the payment of "taxes, charges, and assessments," and other expenses (pages 305, 306, 95 U. S., 24 L. Ed. 450), until such period as Congress might incorporate the institution which the will contemplated. Here were white acre and black acre, as well as an annual appropriation of funds which might extend beyond the period limited by the ordinary rule as to perpetuities. We refer to this decision merely because it is illustrative of all others on the topic. Also the confidence vested in the executors was not of the class which is regarded in equity as personal,

a full description of which is found and illustrated in Godefroi's Law of Trusts (2d Ed.) 271, and sequence. All that the executors were required by Mr. Brigham's will to do could be accomplished by any gentlemen of fair character, fair experience, and fair ability, or could be worked out by the chancellor himself. The case in that respect is clearly within the common rule that equity will not allow a trust to fail for want of a trustee.

Neither is there in this case any special difficulty arising from the matter of accumulations. As the whole estate given by the fourteenth paragraph vested from the death of the testator, as we have shown, the accumulations, under the absolute rules of law, would follow the principal, as an incident to it, even if no provision had been made in the will with reference to them. This proposition goes so far that, even when payment of both interest and principal, where no charity is involved, is postponed to a particular period, the legatee, under the positive operation of the common law, may sometimes put an end to the accumulations and receive the income as it accrues. An extreme illustration of this is seen in Wharton v. Masterman (1895) A. C. 186. Indeed no case can be found where it has ever been held that the mere rule against perpetuities avoided a directed accumulation, even when resting on a future contingency, except under the same circumstances which would reach the principal fund. Every text-writer and every decided case of authority, unless where there are some local peculiarities, as in Virginia and New York, permit accumulations of income for charitable purposes under the same rules which govern the postponement of the application of the principal, and without any other limitations. There can be no doubt that in England the period over which accumulations in which the public are concerned may extend was in some degree, if not entirely, subject to the control of the crown, acting directly or by its chancellor, though the chancery would not allow the fund to remain indefinitely in its registry; facts which it has been suggested account for the origin of the amelioration in all respects of the rules with reference to perpetuities so far as concerns charitable uses. In harmony with what we have said, a very sensible and true observation on this topic is that of Mr. Justice Lathrop, speaking in behalf of the court, in St. Paul's Church v. Attorney General, 164 Mass. 188, 204, 41 N. E. 231, 237, as follows:

"We are of opinion, however, that the proper course is to hold that the limits of an accumulation for the benefit of a charity are subject to the order of a court of equity. By this method of solving the difficulty, on the one hand an unreasonable and unnecessary trust for accumulation can be restrained, and, on the other hand, a reasonable accumulation can be allowed to carry out the intention of the benefactor, and to secure the accomplishment of the trust in the best manner."

In the present case it might be suggested, if necessary, that the intended accumulation was a very wise one, because we cannot shut our eyes to the fact that the modern demands of hospitals, as well as of education, are so extensive as to require, in order to accomplish useful results, what heretofore would have been regarded as immense sums. However all these things may be, and although at times accumulations may be absorbed into the principal, as was done in Wharton

v. Masterman, ubi supra, no text-writer or judicial authority necessary to be considered has ever held that accumulations should not, in some way, go to the trust under the circumstances of the paragraph of the will we have under consideration, whether construed as giving an estate in præsenti or as postponing the vesting pending the result of a contingency. It is specifically stated that, except where there is some peculiar local policy arising through statutes or otherwise, the same practical rules, subject only to the settled limitations with reference to perpetuities, apply whenever both principal and profits are given together even by way of an executory devise. 4 Kent's Commentaries, *286.

This last proposition brings us back to a restatement, briefly, of some of the propositions relating to this case. Except for the fact that the complainant justly regards the issues involved as being, under the circumstances, of very grave importance, and has supported his propositions with much skill, as well as with great earnestness, the whole might have been dismissed from our consideration by a general reference to the state of the authorities; but under the circumstances we have felt compelled to consider all aspects. As we have said, we regard the whole estate given by the fourteenth paragraph of this will as vested from the death of the testator. An executory devise is correctly defined as a devise over after a devise in fee simple, which was not allowable at common law. Greenleaf's Cruise on Real Property, vol. 6, *366. In the present case the equitable fee was at all times devoted to charity; but the complainant regards only the legal title, and maintains, therefore, that the ultimate title which he is attacking is a mere executory devise. In that position he is undoubtedly sustained by some expressions which were not necessary, and therefore not thoroughly considered. Even so, his positions fail, alike as to the principal body of the estate and the accumulated income; for, even so, a limitation over in behalf of a charitable purpose may take effect, unless there is a prior fee vested for some other than a charitable purpose for a period beyond the time prescribed by the rule against perpetuities. This was fully stated by the learned judge who disposed of this case in the Circuit Court.

Except for the reasons we have already given, which require us to explain our views more fully than we otherwise would have done, we could well have disposed of the case by the notes of Mr. Justice Story on charitable bequests, which first appeared as an appendix to 4 Wheat. Ed. 1819. It is to be remembered that Mr. Justice Story imbibed his knowledge of the law in Massachusetts; and it never has been questioned, and cannot be questioned, that the views therein expressed by him are the same as have been accepted as settled rules in England, aside from interference by Parliament, in the Supreme Court of the United States, and also throughout New England, especially in Massachusetts. Whatever the cause of their preparation, the notes state succinctly the principal rules which govern this case, as follows:

"So, if a legacy be given to trustees to distribute in charity, and they die in the testator's lifetime, although the legacy is lapsed at law, yet it would be enforced in equity. Again, although in carrying into execution a bequest to an individual, the mode in which the legacy is to take effect must be of the substance of the legacy, yet, where the legacy is to be a charity, the court will consider charity as the substance; and in such cases, and in such

cases only, if the mode pointed out fail, it will provide another mode by which the charity may take, but by which no other than charitable legatees can take."

"So, if a corporation, for whose use a charity is designed, is not in esse, and cannot come into existence but by some future act of the crown—as, for instance, a gift to found a new college which requires an incorporation—the gift is valid, and the court will execute it."

The complainant, however, especially as to accumulations, relies on certain expressions in Hall v. Hall, 123 Mass. 120, decided on September 6, 1877, and cited in Hale v. Hobson, 167 Mass. 397, 45 N. E. 913, decided on January 11, 1897. It is not necessary for us to analyze these expressions, because, while we are bound by the settled rules of law in Massachusetts, it is only as they were settled and unquestioned before the issues in the present case crystallized. This occurred when the testator died, a few days before the opinion in Hall v. Hall was passed down. It is hardly necessary to refer to authorities to establish the proposition that it was then settled in that state that under circumstances like those at bar, where the disposition of the accumulations goes hand in hand with that of the corpus of the property, the fact that accumulations are specifically given is not detrimental to the vesting of the entire gift; but it is convenient to cite Childs v. Russell, 11 Metc. 16; Fuller v. Winthrop, 3 Allen, 51; Tainter v. Clark, 5 Allen, 66; Bowditch v. Andrew, 8 Allen, 339; and Weston v. Weston, 125 Mass. 268. Even if Hall v. Hall had been passed down before the death of the testator, and could be applied as maintained by the complainant, the most that could be said about it would be that it unsettled the rules in Massachusetts, so that we would be obliged to look to the English practice and to that of the Supreme Court. We are therefore clear that in all aspects of the case it is against the complainant on that portion of his major proposition which we have marked (1).

Coming now to that portion of the major proposition which we have marked (2), to the effect that the estate could vest in the corporation which is made defendant to this bill only to the extent of its originally authorized capacity to hold property, and that, therefore, the attempted devise of any excess was void, the answers are simple. In the first place, the rule of cy pres, to which we have referred, and which is so effectual with reference to charitable uses, would vest the gift in some way if the present corporation was incapable of taking; so that, in view of the fact which we have already stated, that we, sitting in equity, cannot regard the legal title of the complainant, no question could be involved herein which would concern him. But, if the corporation defendant were not expressly authorized by its charter to take the whole of the gift, it is a non sequitur to allege that the "attempted devise" to it of the excess was void, because no such gift was ever attempted by the will. The gift was of necessity to a corporation which could validly and legally take, and only to such a corporation; so that, therefore, if the defendant corporation were incapable of taking, the trusts would wait until one was organized which could take.

In any view, however, the complainant misunderstands the relations of the present corporation. The questions which have arisen with regard to the capacity of corporations to take, have been with reference to existing corporations which were specifically named in the will.

Of course, with reference to corporations so named which have not the capacity to take, if there can be any such corporations, a question may well arise whether, as against the heirs, if the heirs have any rights whatever in consequence thereof, the Legislature could enlarge the power of a corporation after the decease of the testator. No such question arises here, however, because, as we have said, the gift was only to a corporation which was capable of taking; and, if there was any apparent incapacity, the Legislature could, without any possibility of interfering with anybody's vested rights, enlarge its capacity at any time before a conveyance to it was made.

In order, however, to avoid any impression that we do not fully agree with the learned judge of the Circuit Court as to this branch of the case, we refer to the fact that, without any question whatever, the opinion given in behalf of the Supreme Court in Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401, already cited, at page 188, 107 U. S., page 348, 2 Sup. Ct., 27 L. Ed. 401, observed as follows:

"Restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the state which created it."

The opinion did not doubt this rule, and it seems strange that it should ever have been doubted. It is entirely analogous to the rules with reference to the vesting of real estate in aliens, although, with regard to aliens, there was, of course, in the common law of England, a deep-seated policy against such vesting on account of certain obligations arising out of the feudal relations inconsistent therewith. Yet it never has been questioned that, while the common law, which never of itself does a useless thing, would not throw an estate upon an alien by inheritance, the alien might always take by deed or devise, and hold until inquisition of office to the contrary in behalf of the crown. Greenleaf's Cruise, vol. 3, *320, vol. 4, *21, vol. 6, *15. This rule has been stated by the Supreme Court; and analogous rulings, which stand unquestioned, have been made by that court in other respects. In Runyan v. Coster, 14 Pet. 122, 10 L. Ed. 382, it was decided, at page 131, 14 Pet., 10 L. Ed. 382, that, under the laws of Pennsylvania, corporations barred from holding lands would retain them until divested by due course of law by proceedings instituted by the commonwealth alone, and for its own use. Although Runyan v. Coster rested on local rules, yet, at page 131, 14 Pet., 10 L. Ed. 382, the principle was said to be the same which the Supreme Court had repeated in Fairfax v. Hunter, 7 Cranch, 621, 3 L. Ed. 453, to the effect that a title acquired by an alien by purchase is not divested until office found. Thus the analogy between an alien and a corporation was declared with reference to the ability to take and hold property. Exactly the same principle is involved in the various cases in reference to the limitations imposed by the statutes of the United States in regard to the powers of banks having federal incorporations, which cases have continued constantly in the same line from our earliest history to the effect that such incapacity can be taken advantage of by the United States alone. Fleckner v. United States Bank, 8 Wheat. 338, 5 L. Ed. 631; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; Fortier v. New Orleans Bank,

112 U. S. 439, 5 Sup. Ct. 234, 28 L. Ed. 764. In the present case the commonwealth, by inevitable inference from its special legislation enlarging the capacity of the defendant corporation to take, has waived all its rights, whatever they might have been, so that the title in question is now quieted in all directions. On the whole, this branch of the complainant's case could accomplish nothing, except, as stated in Russell v. Allen, 107 U. S. 163, 173, 2 Sup. Ct. 327, 27 L. Ed. 397, to suggest the possibility of a judicial determination, at the proper time and by the proper tribunal, of any question which might be made, if any, whether the defendant corporation meets the requirements of the gift under consideration—a question in which, as we have shown, the complainant has no interest.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.