THE AMERICAN INSTITUTE OF ARCHITECTS *vs.* ATTORNEY GENERAL & another.[1]

Essex.    February 8, 1955. — June 3, 1955.

Present: QUA, C.J., RONAN, WILKINS, & COUNIHAN, JJ.

*Trust,* Charitable trust, Appointment and qualification of trustee, Quasi trust, Foreign trustee. *Charity. Corporation,* Charitable corporation.

A foreign charitable corporation was not required to secure a Massachusetts Probate Court appointment as trustee and to qualify as such by giving bond in order to receive from the executor of the will of a Massachusetts decedent a gift thereunder to the corporation to be held as a trust fund by it as trustee in trust for specified public charitable purposes within its corporate purposes.

PETITION IN EQUITY, filed in the Probate Court for the county of Essex on March 3, 1954.

The case was heard by *Costello, J.*

In this court the case was submitted on briefs.

---

[1] George E. Roewer, executor under the will of Antoinette Perrett.

*Philip Nichols & Joseph A. Boyer*, for the petitioner.

*George Fingold*, Attorney General, & *Dorice S. Grace*, Assistant Attorney General, for the Attorney General.

*George E. Roewer*, executor, pro se.

COUNIHAN, J. Antoinette Perrett, late of Rockport, died, leaving a will and codicil both of which were proved and allowed by the Probate Court for Essex County. By these instruments she provided so far as is here material as follows: "4. If both my husband, Galen J. Perrett and my sister, Elsa Rehmann, should predecease me, then I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal to The American Institute of Architects, of Washington, D. C., upon and subject to the following trusts, uses and conditions: (A) Said principal fund, with all accretions thereto . . . shall be known and designated as 'The Carl F. Rehman [*sic*] and Marie J. Rehmann Fund, created by Antoinette Rehmann Perrett and Elsa Rehmann in memory of their parents.'"

Both Galen Perrett and Elsa Rehmann predeceased Antoinette Perrett. The American Institute of Architects, hereinafter called the Institute, is a nonprofit membership charitable corporation organized under the laws of the State of New York and is authorized to maintain an office in Washington, D. C. The purposes of the trust as specified in the will are substantially the same as and coextensive with the corporate purposes of the Institute. George E. Roewer by the codicil was named as executor of the will without surety and he was duly appointed as such. In the administration of the estate he transferred some of the securities of the estate to the Institute which had accepted the gift under the will. One of the transfer agents of a corporation, part of whose stock was sought to be transferred to the Institute by the executor, refused to make such a transfer without proof of the qualification of the Institute as trustee by giving bond to the Probate Court.

This precipitated the present proceeding in which the Institute petitioned for construction of the will and for a declaratory decree, G. L. (Ter. Ed.) c. 231A, inserted by

St. 1945, c. 582, § 1; to have the following questions determined: "A. Is it necessary that this petitioner secure appointment by this court as trustee of said gift and qualify by giving bond as such trustee in order that it may be entitled to receive such gift: B. May the petitioner continue to hold the securities already distributed to it under the name 'The American Institute of Architects.' C. May the respondent executor transfer the remaining securities to said petitioner as 'The American Institute of Architects.'" The executor filed an answer admitting the facts alleged in the petition but denying the principles of law the petitioner relied upon. The Attorney General filed an appearance but no answer.

The petition was heard upon the petition and the answer of the executor and the judge decreed as follows: "that under the terms of said will it is necessary that the petitioner qualify as trustee by giving bond to the Probate Court in order that it may be entitled to receive the said gift; that the petitioner is not entitled to continue to hold the securities already distributed to it under its corporate name 'The American Institute of Architects'; and that the respondent George E. Roewer, executor of the will of said deceased, may not transfer the remaining securities to said corporation or to any other except a duly appointed trustee qualified to act as such in this court." An appeal by the Institute from this decree brings the case here.

Clauses C, D, and E of paragraph 4 of the will read: "(C) From time to time, as sound business and meritorious purpose may to said Trustee seem advisable, to pay for establishing and/or maintaining, scholarships for advanced study by deserving architects, and/or deserving students of architecture, and/or for rendering them pecuniary aid in travel in this country or abroad and/or research with respect to said art, and/or for pecuniary aid to deserving artists and/or craftsmen who may be pursuing the study of their art or arts with an architectural point of view or purpose. (D) The capital of the Trust Fund herein created, as set forth in Paragraph 4, shall be held inviolate for the pur-

poses of the Fund so long as The American Institute of Architects shall endure, and shall not be transferred to any other organization, hypothecated, or distributed in whole or in part until and unless the Institute shall cease to exist, or until and unless the donor shall have otherwise provided in the original gift, devise or bequest. (E) If The American Institute of Architects shall conclude to terminate its affairs and shall have no successor with similar purposes, aims and objects and with the ability to maintain the endowment fund, herein provided, before the assets of the Institute shall be distributed to their members, the amount held in said endowment fund, herein created, shall be transferred and conveyed by deed of trust or otherwise to and accepted by some organization or organizations then most fitted to maintain the funds herein created and to carry on the purposes in accordance with the provisions of the fund herein created." Paragraph 5 of the will reads in part, "I hereby give . . . to my said Trustee, its substitute or successor, full power to sell . . . ." Paragraph 6 reads, "My said Executor or my said Trustee shall not be responsible for any act done hereunder if it be done in good faith."

There is no doubt from the language of the will that the testatrix intended that the gift be devoted to specified public charitable purposes and the Institute is designated as a trustee and the gift as a fund or trust fund. The sole question for us to determine is, (1) Does the Institute take the gift upon a technical trust subject to appointment and qualification by the Probate Court? or (2) Does the Institute take the gift free of a technical trust but subject to a restriction, that restriction being that the gift be used for the particular purposes set forth in the will? In the first instance the decree of the probate judge would be correct, and in the second instance the decree would be wrong.

In the determination of this question we must be guided by Massachusetts law because the testatrix was domiciled here at her death. *New England Trust Co.* v. *Wood,* 326 Mass. 239, 242. Unfortunately no case in this jurisdiction has been brought to our attention and we have found none

in which this precise question has been passed upon. Cases like *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, *Wellesley College* v. *Attorney General,* 313 Mass. 722, and *Ames* v. *Attorney General, ante,* 246, did not consider the problem before us because it was not involved in those cases and they are not therefore in point.

The nearest approach to the case at bar is *Hubbard* v. *Worcester Art Museum,* 194 Mass. 280, in which a will was involved which provided a bequest to the Worcester Art Museum which was established for the purpose of "founding an institution for the promotion of art and art education in . . . Worcester . . . ." Its charter provided that "All of · said property and funds of the corporation, however, are to be held solely in trust for the benefit of all the people of the city of Worcester." It was said at pages 289–290, "The gift was to a public charity. The purposes of the Worcester Art Museum . . . show the charitable uses to which all property held by it must be put. It is all held 'solely in trust, for the benefit of all the people of the city of Worcester.' We have no doubt that the property was given under the testator's will with a general charitable intent, with which the Worcester Art Museum, as a corporation, had no other connection than as an instrument to carry out the general purpose of the testator. . . . The general charitable purpose was predominant in the mind of the testator, and not a desire to give to a particular corporation. The charitable purpose may be implied in the name or object of the devisee. . . . The object of the devisee, as a legally established public charity, was well known to the testator. To state the same proposition in other language, an implication to create a public charity may arise 'from the character of the body to which the gift is made, or from publicly avowed purposes of its organization and action.'" There was added a statement that "If the corporation . . . was incapable of taking the property and carrying out the general charitable intent of the testator," the court could apply the doctrine of cy pres.

In *Brigham* v. *Peter Bent Brigham Hospital,* 134 Fed. 513

(C. C. A. 1), there was involved a clause in a will directing the executors to form a corporation for the care of sick persons in indigent circumstances and to transfer to it all the property and estate provided for it in the will, to be used by it and employed for the purposes declared in the will. It was said at page 517, "We should observe that the corporation contemplated by the will was not to hold in trust, in the technical sense of the word, the property which it might receive. It was to hold it for its own purposes in the usual way in which charitable institutions hold their assets. Such a holding is sometimes called a quasi trust, and an institution like the one in question is subject to visitation by the state; but the holding does not constitute a true trust. On the transfer of the property devised . . . to a corporation as was anticipated, all technical trusts ceased . . . . There has been no doubt that a fund devoted to the founding of hospitals in general is within the rule as to public charities." And at page 526 it was said, "[The] rule of cy pres . . . which is so effectual with reference to charitable uses, would vest the gift in some way if the present corporation was incapable of taking . . . ." See *St. Joseph's Hospital* v. *Bennett*, 281 N. Y. 115.

What was said in the *Brigham* case appears to be applicable to the situation in the case at bar. We agree with this reasoning and therefore hold that the Institute takes this gift not upon a technical trust but rather upon a quasi trust. Title to the gift vested in the Institute upon a restriction that it be used only in the manner and for the purposes expressed in the will of the testatrix.

We are fortified in our conclusions by what is said in the introductory note to c. 11 of the Restatement: Trusts, where the distinction between private trusts and charitable trusts is clearly stated and differences in their characteristics noted. In his learned treatise on Trusts, § 96.3 and § 348.1, Professor Scott appears to arrive at the same conclusions we do.

It follows therefore that the Institute is not subject to appointment and qualification as a trustee by the Probate

Court.  It may continue to hold the securities already distributed to it and the executor shall transfer to it the remaining securities.  The decree must therefore be reversed and a new decree be entered not inconsistent with what is said in this opinion.

*So ordered.*