Rockingham,
No. 4975.

PORTSMOUTH HOSPITAL & a.

*v.*

ATTORNEY GENERAL.

Argued January 3, 1962.

Decided March 6, 1962.

52

56

58

*Boynton, Waldron & Dill (Mr. Wyman P. Boynton* orally), for the plaintiffs.

*Maurice J. Murphy, Jr.,* Attorney General, and *Ernest R. D'Amours,* Director of Register of Charitable Trusts (*Mr. D'Amours* orally), for the Attorney General.

*McLane, Carleton, Graf, Greene & Brown (Mr. Kenneth F. Graf* orally), amicus curiae.

*Arthur H. Nighswander* (by brief and orally), amicus curiae.

*Franklin Hollis,* amicus curiae.

BLANDIN, J. The first question transferred is whether the Superior Court has "jurisdiction to entertain the petition for termination" of the testamentary trust. The plaintiff trustees' bill in equity contained a prayer for termination, and implicit in the transferred questions are the issues of whether the situation is a proper one for the application of a deviation or the *cy pres* doctrine. In such cases we have not hesitated to hold that the Superior Court has jurisdiction of the matter and unquestioned authority to permit either a deviation or *cy pres. Opinion of the Justices,* 101 N. H. 531, 533; *Pittsfield Academy* v. *Attorney General,* 95 N. H. 51; *Citizens National Bank* v. *St. Peter's Lodge,* 102 N. H. 352.

That the testator's main objective here was to benefit the plaintiff hospital by directing that the income from the testamentary trust be used for certain of the corporate purposes of the hospital is made clear by the language of paragraph 34 of the first codicil and paragraph 1 of the second codicil. In the explanatory statement to the second codicil, wherein the controversial clause 34 is amended, he says he desires to alter his previous disposition "slightly." After so doing by providing for the first time for the appointment of trustees for the management of one-half of the brick block and stores property involved, he then states: "I make this change, by this provision of this codicil, in order to be sure to protect my sister-in-law, Annie F. Jenness, and her estate, in her ownership of one common and undivided half of said premises, and give to her the preference to purchase my said one half from said Trustees in case of a sale."

It thus appears that the purpose, and the only purpose of the testator in creating the testamentary trust, was to protect his sister-in-law and her interests so long as she lived. She is now deceased, and from the testator's specific language quoted above and the whole tenor of the will and codicils, it is obvious that the reason for the creation of the trust relationship has ceased.

It will, if continued, encumber the efficient, direct and economical implementation of the wishes of the testator. Since the testamentary trust has served the only objective for which it was set up and its continuance will tend to defeat and substantially impair, rather than accomplish the design of the testator, it should be terminated. Restatement (Second), Trusts, s. 336, *comment* a.

It is further apparent that the purpose of the testator can now best be accomplished if the institution itself holds and administers the trust assets. This it is expressly authorized to do by the statute under which it was organized, Laws 1895, c. 263, s. 6, and also by RSA 292:18, 19 (supp), whereby any charitable corporation organized by an act of the Legislature may maintain and operate common trust funds.

It is agreed that the Pickering annex has of necessity been so incorporated into the remodeled and enlarged Portsmouth Hospital that it is no longer distinguishable as a separate unit, but that the trust funds have been and are being used for the purposes designed by the testator. It is to be presumed that this situation will continue under the management of the Portsmouth Hospital. The property should therefore be turned over to it to be held in trust and the net income expended for hospital purposes. *Pittsfield Academy* v. *Attorney General,* 95 N. H. 51; *Adams* v. *Page,* 76 N. H. 96. See *Opinion of the Justices,* 101 N. H. 531.

We have, then, a situation where a testamentary trust having been terminated, its assets will go to a charitable corporation, in this case the plaintiff hospital, to be held by the corporation in trust the net income to be used for its corporate purposes. In these circumstances, as well as when a testamentary gift is made directly to a charitable corporation for any of its corporate purposes, it has not been considered necessary for such a corporation to qualify as trustee in the probate court, and we are unaware of any case under our law which supports such a requirement. *Roberts* v. *Corson,* 79 N. H. 215, 216. There is no indication that the testator desired the hospital to do this. The expense, the delays, and the effort required for this and similar institutions or schools and colleges

with their innumerable continuing bequests, large and small, to qualify as trustees in the probate court are too obvious to require delineation.

When the question arose in Massachusetts, the court found no difficulty in holding that a charitable corporation is not subject to appointment as trustee in the probate court. *American Institute of Architects* v. *Attorney General,* 332 Mass. 619, 624-625. Such, too, appears to be the better rule. See Restatement (Second), Trusts, *s.* 348, *comment* f, *p.* 212; IV Scott on Trusts (2d *ed.*) *s.* 348:1, *p.* 2559.

Authorities cited by the Attorney General, such as *Glover* v. *Baker,* 76 N. H. 393, 402, and *Fernald* v. *Church,* 77 N. H. 108, to the effect that the hospital should qualify as trustee in the probate court, are not applicable. In these decisions, the court made it clear that the basis of its holding was that the testatrix did not bequeath the property for the general purposes of the Christian Science Church, but for the specific purpose of promoting and extending Christian Science as taught by her to all parts of the world, and furthermore that she wished the property to be administered in trust for such a purpose. *Glover* v. *Baker, supra,* 401, 425; *Fernald* v. *Church, supra,* 109. No like intent of the testator appears in our case, but rather, as previously stated, a design to create a trust only for a specific limited purpose, which has now been fulfilled.

The Attorney General also relies upon RSA 7:28 to prove that the hospital is bound to report to him. The section provides: "Any fiduciary holding property subject to equitable duties to deal with such property for charitable or community purposes shall annually, on or before July first" make a written report to the director.

However, section 21 reads thus: "The words 'charitable trust' as used in this subdivision shall mean any fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it and subjecting the person by whom the property is held to equitable duties to deal with the property for charitable or community purposes. There are excluded from this definition and from the operation of this subdivision all charitable corporations holding property or funds for their corporate purposes and trusts created *inter vivos* until such time after the death of the settlor or donor as the charitable or community purpose expressed in such trust becomes vested in use or enjoyment." It seems clear to us the Legislature intended that the plaintiff as a charitable

corporation holding property for its charitable purposes should not be subject to section 28.

In this connection the history of the act sheds light upon the legislative purpose. Laws 1947, *c*. 94 (RSA 7:21) originated in H. B. No. 150. In its original form it defined charitable trust as: "Definition. The words 'charitable trust' as used in this subdivision shall mean any fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it and subjecting the person by whom the property is held to equitable duties to deal with the property for charitable or community purposes, whether vested or contingent." This provision was not adopted and the bill as finally passed disclosed an obvious design to deny the Director of Charitable Trusts control of such corporations, although it did give him additional limited jurisdiction over *inter vivos* trusts, which formerly he did not possess. See Laws 1943, 181:1, par. 13-b. We fully recognize the desirability of reasonable control by the State over charitable trusts and charitable corporations and the substantial advances made here in this direction commencing in 1943. D'Amours, State Supervision of Charities: Present Status, N. H. Bar. J., Vol. 4, *p*. 76. However, it is unquestionably the legislative prerogative to decide where to draw the line in the matter of this control and they have done so here by their exclusions.

Our conclusion therefore is that the Superior Court may decree termination of the probate trust administered by the individual trustees, its assets to be transferred to the hospital upon allowance of the final account of the trustees in the probate court. The plaintiff does not have to qualify as trustee in the probate court and it may administer and utilize the net income of the funds in trust for the corporate purposes of the hospital without accounting to the Director of Register of Charitable Trusts.

*Remanded.*

All concurred.